RICH *v.* DAILY CREAMERY CO.

1. Conspiracy—Pleading.

Declaration in which it was averred that individual defendants and corporation entered into a conspiracy to deprive plaintiff of his business, property and good will by wrongfully and unlawfully evicting him from his place of business by causing disconnection of power, preventing him from operating his ice-cream making apparatus and serving his customers from whom he had taken orders, which disrupted his business and prevented him from paying his obligations for machinery and equipment recently purchased and which defendants sought to appropriate to themselves, stated a cause of action in tort.

2. APPEAL AND ERROR—CONSPIRACY—INSTRUCTIONS—EVIDENCE—VERDICT.

In action for damages for conspiracy to deprive plaintiff of his business, property and good will in which defendants interposed defense that contract under which parties operated was obtained by misrepresentation and fraud, where issues were submitted to jury under proper instructions by the court, verdict for plaintiff is conclusive of finding there was no fraud or misrepresentation on plaintiff's part that induced the contract; also, it is indicative that jury relied upon plaintiff's testimony upon other disputed questions of fact.

3. CONSPIRACY—CORPORATIONS—AUTHORITY—ESTOPPEL.

In action for damages for conspiracy to deprive plaintiff of his business, property and good will, defendant corporation was estopped from claiming that agreement relative to ice-cream making plant under which parties operated for nearly four months had not been authorized by corporation where no question was raised as to its validity during that time, it knew by its officers and agents that plaintiff was constructing a building and installing equipment and machinery on its premises pursuant thereto at a cost to him of several thousand dollars, and when agreement was terminated by the corporation no claim was then made that the agreement was invalid because procured by fraud.

4. DAMAGES—BREACH OF CONTRACT—MINIMIZATION—INSTRUCTIONS.

In case of a breach of contract the injured party must make every reasonable effort to minimize the damages suffered and it is the court's duty so to charge the jury upon request.

5. SAME—MINIMIZATION—BURDEN OF PROOF.

In an action for damages for breach of contract or for a tort, the burden is upon the defendant to show in mitigation of damages claimed that the plaintiff has not used every reasonable effort within his power to minimize his damages.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—REQUESTS TO CHARGE.

The failure of a court to charge jury relative to plaintiff's duty to minimize damages may not be urged as error on appeal where no request therefor was submitted.

7. NEW TRIAL—EXCESSIVE VERDICT—REMITTITUR—CURING ERROR.

In action for damages for conspiracy on part of defendant corporation and its directors to deprive plaintiff of his business, property and good will in which jury rendered a verdict of $15,162.50, where trial court confessed error in his charge

to jury and evidence on many items is conflicting, his grant-
ing of a new trial unless plaintiff would remit all in excess
of $8,500 did not cure error in permitting jury to go so far
into the realm of speculation in arriving at the damages;
hence, new trial confined to determination of damages suffered
by plaintiff is ordered.

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted October 22, 1940. (Docket No. 61, Cal-
endar No. 41,252.) Decided February 7, 1941.

Case by Peter Rich against Daily Creamery Com-
pany, a corporation, and others for conspiracy to
deprive plaintiff of his business property and good
will. From verdict and judgment for plaintiff, de-
fendants Daily Creamery Company, Frank Ledwon,
Anthony Cwiek, and Frank Wisniewski appeal.
Reversed and remanded for reassessment of plain-
tiff's damages.

*Max Kahn,* for plaintiff.

*Sempliner, Dewey, Stanton & Honigman,* for de-
fendants Daily Creamery Company, Frank Ledwon,
and Anthony Cwiek.

*Louis Starfield Cohane* and *Regene Freund Co-
hane,* for defendants Daily Creamery Company and
Frank Wisniewski.

CHANDLER, J. Prior to 1936, plaintiff and appel-
lee had been engaged in the business of making ice
cream, his experience having covered a period of
several years. In April of that year, he was taking
a scientific course in ice-cream manufacture at Mich-
igan State College.

Defendant Daily Creamery Company's business
consisted of the purchase, pasteurization and mar-

keting of milk and cream, and of the purchase and distribution of dairy products at retail. It is and was a domestic corporation with its principal place of business in the city of Hamtramck. The individual defendants were, at the time of the acts complained of by plaintiff in this suit, directors of said corporation.

Following some negotiations, plaintiff and defendant Daily Creamery Company entered into the following written contract:

"This agreement, made and entered into this 24th day of April, A. D. 1936, by and between the Daily Creamery Company, a Michigan corporation, of 3301 Holbrook Avenue, Hamtramck, Michigan, party of the first part, and Peter Rich of Detroit, Michigan, parties of the second part, in the manner following:

"Parties of the second part agree to purchase and install in the premises of the Daily Creamery Company, in a space set aside and provided for that purpose, 1 10-ton ice machine, 1 20-horsepower motor, foundation and all other pipes, valves, coils and equipment needed in the hardening room, so-called, and agree further to construct a hardening room 19 feet 6 inches long by 8 feet wide and 88 inches high. Parties of the second part also agree to furnish all the ingredients used in the manufacture of ice cream such as cream, sugar, flavoring, et cetera.

"In consideration of the above, party of the first part agrees to pasteurize, cool and place in icebox the ice-cream mix for five cents per gallon.

"Party of the first part agrees to have Peter Rich serve all customers for ice cream given them by the party of the first part during the existence of this contract.

"Party of the first part also agrees to furnish at its own expense power, light, water and steam necessary for the manufacture of this product. Also

all ice cream containers, cans, trucks, et cetera, shall bear the name of Daily Creamery Company.

"Party of the first part likewise agrees to purchase from second parties all ice cream needed for its trade at such prices as are available elsewhere.

"It is further agreed between the parties hereto that this agreement shall remain in full force and effect for a period of three years from and after this date, and that during the existence of this agreement no rent shall be paid by second parties to first party.

"It is further agreed that at the termination of this contract parties of the second part agree to sell and party of the first part agrees to purchase this entire ice-cream equipment at a price fixed by two qualified machinery experts, less depreciation.

"It is further agreed that the entire equipment and machinery installed by second parties in the premises of first party shall be and remain the sole and separate property of parties of the second part until the right of purchase hereunder is exercised by first party and shall not in any way be liable for the debts and obligations of party of the first part.

"In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

"DAILY CREAMERY COMPANY,
by FRANK WISNIEWSKI, Pres.,
ANTHONY CWICK, Mgr.
PETER RICH

"In the presence of:
    IRENE ROSSA."

Immediately following the execution of the contract, plaintiff ordered all of the machinery and equipment required for the installation of an ice-cream manufacturing plant in and on the premises of the corporation, and the necessary supplies and equipment for the conduct of the business, including metal ice-cream cans, cartons and a delivery truck bearing the imprint of the creamery's name. Dur-

ing May, the machinery, pipes and coils were installed, and an ice-cream hardening room, having a storing and freezing capacity of 2,000 gallons of ice cream, was constructed on the corporation's premises at a location designated by defendant Cwiek. This was done at a cost to plaintiff of $7,882.11, of which amount he paid $3,746.21, and became obligated for a balance of $4,125.11.

Plaintiff commenced the manufacture of ice cream in the fore part of June, 1936, and continued until the 27th of the following August.

About August 1st, defendant Cwiek told plaintiff that the company couldn't cover the expense for power and water used. On August 7th, defendant Wisniewski told plaintiff that the company would have to have either rent from him or more money for pasteurizing his mix. Plaintiff replied that he expected them to live up to their contract. About August 15th, defendant Cwiek asked plaintiff to attend a directors meeting, and said that the company was not making a profit. Plaintiff refused to attend the meeting.

On August 21, 1936, defendant Ledwon served upon plaintiff the following notice:

"DAILY CREAMERY COMPANY
(Incorporated)
Hamtramck, Michigan

"FRANK LEDWON, President
A. KARCZMAYZYK, Secretary
FRANK WISNIEWSKI, Treasurer
GUST SPIEWAK, Vice-Pres.
EDW. GORNICK, Fin. Sec.

Hamtramck, Michigan, August 21, 1936.
"Mr. Peter Rich:

"You are hereby notified that the board of directors of the Daily Creamery Company, Inc., expects you either to pay $115 per month rent from the

August 18th, 1936, on or else pay 12c per gallon mix used. If you won't agree to these conditions within the 48 hours from 11 p. m. of August 21, 1936, the power used by you will be cut off and the Daily Creamery Company, Inc., will not take any responsibility for any material that might spoil because of the above mentioned act.

FRANK LEDWON, President.
EDWARD GORNICK, Fin. Secretary.
FRANK WISNIEWSKI, Treasurer."

According to defendant Wisniewski, this action was authorized by the board of directors. He testified:

"We sent this paper to Mr. Rich because the directors voted that three men, myself, Mr. Ledwon and Mr. Cwiek I think was the third one be a committee to give the note to Mr. Rich and Mr. Ledwon handed it to him."

The switch which disconnected the power from plaintiff's plant was pulled by defendant Cwiek on the afternoon of August 27th. Plaintiff was not permitted to operate after this date, although he and his employees returned to the plant every day for a week for the purpose of operating if he could obtain the power to enable him to do so. He left all of his equipment in defendant's plant, much of it being attached to the building, some being built into the walls of the hardening room at the time of its construction by plaintiff.

Subsequently, he instituted this action against the defendants herein. The declaration contained a count in trespass on the case and a count in assumpsit. On motion by defendants to dismiss, the count in trespass was sustained and the assumpsit count was dismissed as to the individual defendants. Before submission of the case to the jury, the assumpsit count was withdrawn by plaintiff, and the case went

to the jury on the trespass count alone against all of the defendants.

The jury returned a verdict against all of the defendants, except defendant Gornick, for the sum of $15,162.50.

Defendants made a motion for a new trial, which was denied on condition that plaintiff file a remittitur of $6,662.50 of said judgment. He filed such remittitur and a judgment for $8,500 was accordingly entered.

From this judgment defendants Daily Creamery Company, Frank Ledwon, Anthony Cwiek and Frank Wisniewski appeal.

Appellants state in their brief:

"There are really only two questions involved:
"1.   Did appellee's evidence within the declaration make a tort case for the jury?
"2.   When appellants demand a jury trial can the court deprive them of this right by making an erroneous and misleading charge as to the law (notwithstanding the court's duty to charge the jury as to the law under 3 Comp. Laws 1929, § 14309 [Stat. Ann. § 27.1038]); and can the trial court claim to have corrected that error by remittitur by attempting to guess whether the jury would have found for appellee; and which of the numerous items of appellee's claim the jury did or did not or should or should not have allowed, or would and should have allowed if a proper charge had been given and in what amount; or is the court's duty under the statute, *supra,* so clear to correctly charge the jury as to the law that, if it fails to do so and an erroneous verdict results, appellant is entitled to a new trial and a jury trial under a proper charge?"

(1)   Briefly stated, the declaration alleged that the individual defendants and the corporation entered into a conspiracy to deprive plaintiff of his

business property and good will; that such conspiracy consisted of the actions of said corporation, by its directors, and said defendants individually, in wrongfully and unlawfully evicting plaintiff from his place of business by causing the power to be disconnected, thus preventing him from operating; that this resulted in a loss to him of several hundred gallons of ice cream; that it prevented him from continuing in the operation of a successful business which he had built up; and that, in refusing to permit him to connect his machinery and apparatus with the power lines in the premises of defendant corporation, he was prevented from supplying and completing orders and from continuing his business which was totally and wholly disrupted and ruined by the action of the corporation and the individual defendants. The declaration further alleged that it was well known to all of said defendants that plaintiff had used all of his capital in setting up said business; that he had incurred obligations in securing machinery and equipment; that the defendants' unlawful conduct deprived him of his customers and of his ability to pay his obligations for machinery and equipment; and that defendants sought to appropriate by such action plaintiff's business to themselves.

We find that the declaration set forth a cause of action in tort against the defendants and that the trial court was not in error in denying the individual defendants' motion to dismiss because the declaration did not set forth a cause of action against them.

The defendant corporation in its answer admitted that the individual defendants were directors of the corporation and admitted the demand made on plaintiff to pay rent or an increased price for pasteurizing his mix; admitted that the written notice of August 21st was signed and delivered to plaintiff

pursuant to authorization and direction of its board of directors; that it refused to permit plaintiff to connect his ice machine and apparatus to the power line after the power was cut off unless he, plaintiff, complied with the terms of said notice; and that the contract, between plaintiff and it, was signed by the parties whose names appeared thereon as alleged.

By way of special defense, defendant creamery company alleged that plaintiff procured said contract by misrepresentation and fraud, claiming that he represented that he had customers and was able to handle and sell 1,000 gallons of ice cream each day; that said representations were relied upon by said corporation; that they were material representations; and that they were false. The corporation also claimed as a special defense that the contract was void because the manager had no authority to sign the same and insisted that it was not binding upon the corporation. It insisted that it owed no duty or obligation to plaintiff because the contract was void.

The individual defendants by their answer admitted that they were directors of the corporation, and claimed that the contract between plaintiff and the corporation was void by reason of fraud and misrepresentation and denied that plaintiff had suffered any damage for any act chargeable to them.

Both the corporation and individual defendants denied that they had entered into any conspiracy among themselves to injure plaintiff as alleged in the declaration. The individual appellants admit that they were the ones who served the notice on plaintiff and that defendant Cwiek was the one who pulled the switch. There was proof that the others were present when this was done.

The proof offered by plaintiff, and which is undisputed in the record, was to the effect that he had invested in the installation of said ice-cream

manufacturing plant the sum of $4,000 and that that was all the money he had; and that he had incurred obligations of $4,125.11 in addition thereto for which he was liable at the time of the trial with the exception of an account of $230 with Beecher, Peck & Lewis for which defendant creamery company was sued and against whom a judgment was rendered, which judgment was paid by the defendant corporation. It is undisputed that all of the machinery and equipment contracted for and furnished by plaintiff was left in the plant of the creamery company, except a Dodge truck, the contract price of which was $700. The undisputed testimony of plaintiff showed that during the time he was operating the plant, he withdrew from the business as his wages the sum of $32.50 per week and that he had no employment from August 27, 1936, until some time in December of the same year. It is undisputed that plaintiff paid to his employees for wages during the week following August 27th approximately $76 under the belief that the defendants would permit him to continue the operation of his business. There was proof on the part of plaintiff that his sales of ice cream had grown from an average of about 200 gallons daily to 400 gallons daily at the time of the wrong complained of by plaintiff. This was disputed by the defendants who claimed that plaintiff's business was only about 100 gallons per day. It is undisputed that some of plaintiff's equipment was repossessed by the vendors, but what disposition was made thereof does not appear. However, the ice machine and some of the other equipment remained on the premises of the defendant corporation. Plaintiff's undisputed testimony showed that he had attempted to secure new credit to go in business again, but without success, and that he had notified his creditors

of his inability to meet his obligations, and had promised that he would pay as soon as he was able.

The issues upon which there was conflicting evidence were whether the plaintiff obtained the contract by misrepresentation and fraud; whether certain sums of money paid by the defendant corporation to Beecher, Peck & Lewis were the obligations of plaintiff; whether certain sums of money paid for cans by the defendant corporation were the obligations of plaintiff or the defendant corporation; and as to the quantity of ice cream in the hardening room on the day the switch was pulled and the amount thereof that was spoiled. These issues were submitted to the jury under proper instructions by the court, and the verdict of the jury is conclusive of a finding by them that there was no fraud or misrepresentation on the part of plaintiff that induced the contract. The verdict of the jury is also indicative that they relied upon the testimony of plaintiff upon the other disputed questions of fact.

(2) Defendants filed certain requests to charge, the substance of which was given by the court in its charge to the jury with one exception, such exception being his refusal to charge as follows:

"Exhibit 1, the contract claimed to have been executed with the Daily Creamery Company, a corporation, purports to have been signed by one, Frank Wisniewski, who was then president of defendant corporation, and one, Anthony Cwiek, the manager; there is no proof submitted in this case to the effect that the board of directors authorized this paper, but the evidence, such as was submitted on this subject, is to the effect that the board of directors did not authorize it, but the persons above named, who signed the same on behalf of the corporation, did so without submitting anything to the board of directors."

The court was justified in refusing to give this charge. All of the parties to the contract involved operated under the same from April 27, 1936, until August 21st of the same year, during which time no question was raised as to its validity. The corporation by its officers and agents knew that plaintiff was constructing a building and installing equipment and machinery on its premises pursuant to such agreement at a cost to plaintiff of several thousand dollars. These circumstances alone work an estoppel against such a defense. Even when the written notice of August 21st, unquestionably authorized by the corporation, was served upon plaintiff, no claim was made by the corporation that said contract was invalid, either because it was made without authority or because it was procured by fraud. The court's refusal to give this charge as requested was fully justified.

No request was made by the defendants to the court to charge the jury that it was the duty of plaintiff to minimize his damages.

There is no question but that it is a well-established rule that in case of a breach of contract the injured party must make every reasonable effort to minimize the damages suffered and that it would be the duty of the court upon request so to charge the jury. We hold, however, under the authorities that the burden is upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages. *Tradesman Co.* v. *Superior Manfg. Co.*, 147 Mich. 702; *Flickema* v. *Henry Kraker Co.*, 252 Mich. 406 (72 A. L. R. 1046); *Milligan* v. *Haggerty, ante,* 62. The same rule is applicable in tort actions as in actions for breach of contract.

At the conclusion of plaintiff's case, defendants moved for a directed verdict of no cause of action.

Decision thereon was reserved by the court. At the conclusion of the case, defendants renewed their motion for a directed verdict, decision thereon being again reserved under the Empson act (3 Comp. Laws 1929, § 14531 *et seq.* [Stat. Ann. § 27.1461 *et seq.*]). After verdict, an order was entered denying both motions. Defendants then moved for entry of judgment *non obstante veredicto,* which was also denied. And defendants moved for a new trial, assigning some 44 reasons in support thereof.

Whether the errors complained of in this motion are such as to require the granting of a new trial necessitates a determination of the merits of the questions involved in appellants' second question contained in their statement of questions involved, which is hereinbefore set forth in full.

A careful review of the court's charge and the objections are directed to the following portions of the instructions:

"Now, members of the jury, if you do bring in a verdict in favor of the plaintiff the last question to be decided is the question of 'how much?' Plaintiff in this case has sued for $50,000. I believe I explained to you at the outset that that, of course, is not a guide for you in assessing damages. It does not cost any more to sue for $50,000 than it does for $500. That is merely the maximum that the lawyer who starts the suit inserts in his declaration. It means that you cannot award a sum any higher than that, but you have a right to award a verdict for any sum up to and including $50,000. *   *   *

"Next, he claims that he should recover for debt incurred by him for equipment. In that respect, for the jury's assistance, Exhibit 39 has been introduced in evidence and you will be given additional copies. This exhibit purports to show a list of the different contracts which Rich entered into when he started

this business, how much he paid down and how much he owed. It shows he owed a balance of $4,125.11.

"Plaintiff, in a case of this kind, is allowed to recover not only what money he actually put into the business but what money he obligated himself to pay by virtue of the contract. Presumably he either has paid or may be called upon to pay those amounts, and therefore he is just as much entitled to recover for the amounts that he promised to pay as for the amounts he actually did pay. * * *

"Then another item: he claims lost profits for 32 months. The contract was for 36 months and he was in occupancy only four months, so that there is 128 weeks, or 32 months that he claims he would have made a profit of $250 per week net, and that therefore he should be allowed a substantial sum on that item.

"In that connection he also claims loss of wages for 128 weeks at $32.50 per week. It is his claim that when he was running this business he put himself on the pay roll and that he was drawing $32.50 per week, which he was entitled to, and that that should be paid him separate from the profit item. * * *

"Now, with respect to the damages suffered in the past, you merely add those together. That would be the amount of your verdict with regard to past damages. Inasmuch as this contract, if it had been carried out—the three years would have expired; it is all past.

"*Mr. Kahn:* That is right.

"*The Court:* Not to confuse the jury: I had thought for the moment that part of these damages might run into the future. If so, a little different rule applies; but on reflection I recall now that the 36 months would have expired in April of this year, and therefore whatever damages were suffered were all in the past and you have a right to add it all up together and that would be the amount of your verdict.

"If you so find in favor of the plaintiff, then he is entitled to recover the damages for all of the natural, direct and proximate consequences of the wrongful act or acts. Damages are the losses which are the direct, natural and necessary result of the acts complained of. You must, therefore, consider what, if any, loss the plaintiff has suffered by way of cash outlay and investment in establishing and maintaining his business; what damage, if any, he has suffered through loss of wages and loss of profits during the life of the contract; what loss, if any, he has suffered through the loss of his credit and inability to re-establish himself in business. In computing damages over the period of the contract you have a right to give consideration to the status of the plaintiff's business as it was on August 27, 1936, and to estimate what might have been expected during the future life of the contract on the basis thereof. * * *

"Mr. Kahn, is there anything further that you think of, outside of the formal requests which have been submitted?

"*Mr. Kahn:* I think that covers it.

"*Mr. Pettiford:* I have no further requests.

"*The Court:* Mr. Wrobleski?

"*Mr. Wrobleski:* I have nothing further."

The court upon consideration of the motion for a new trial evidently concluded that in his instructions to the jury he had not charged definitely enough on the question of damages, leaving too much to the jury in the realm of speculation, and in the determination of said motion, stated:

"*The Court:* This motion for the new trial will be granted unless within 15 days from date plaintiff will remit from the amount of the verdict a sum down to $8,500. The verdict in this case was $15,162.50. The court, upon consideration of this motion for new trial, has read the testimony with reference to the subject of damages and feels that

the verdict which was in excess of $15,000 is exorbitant and excessive, and that any amount in excess of $8,500 cannot be supported by any tangible proofs in this record.

"After allowing the plaintiff the various items of his bill of particulars, as to which definite proofs have been offered, and after adding thereto a substantial sum for various items in dispute, we come to the consideration of claims for lost profits and lost wages. The court feels that the plaintiff has established a period of at least 20 weeks for lost wages, but beyond that it would seem that this record would leave any award for this item purely in the realm of speculation.

"The court feels, also, that the testimony as to lost profits is very unsatisfactory. It is needless now to go into the court's conclusions in detail. I do not say that no sum should be allowed whatever for lost profits, but I do say that the jury, in my opinion, was influenced by testimony which was not sufficiently definite or tangible by way of proof, to support a verdict as large as this one. I therefore feel that justice requires that the verdict be reduced to the sum of $8,500. Plaintiff will have 15 days within which to make up his mind.

"In the motion for new trial, particular stress was laid by the plaintiff (defendants) upon the fact that Exhibit 39 was exhibited to the jury and because Exhibit 39 contained an apparent typographical error. In the second column we find the words 'paid each.' Apparently this was intended to read 'Paid cash.' Plaintiff [defendant?] argues that the jury very probably was confused by this mistake, and suggest that possibly the jury added together the total of the four columns of this exhibit, which would have totaled $15,766.43, and that this amount is somewhat near the amount of the verdict, and probably explains it. The court expressly finds that the jury did not do this. I think it is a mere coincidence that these two amounts are nearly the same. The court feels that

the use of the word 'each' instead of the use of the word 'cash' could have had no influence upon the jury at all, and that one word was just as explanative as the other. I can conceive of no good reason why the jury should have added these four columns together. I must assume that the jury had ordinary intelligence, and did not do so.

"I further find that, outside of the items claimed in Exhibit 39, which total $7,882.11, there were many other items in plaintiff's bill of particulars which were covered in the charge of the court, and which no doubt were considered by the jury in reaching its verdict, such as ice cream that was spoiled, for instance, loss of credit, and the items already referred to, viz., loss of profits and loss of wages.

"It is my opinion that the verdict was arrived at by the jury by adding to the total sum set forth in Exhibit 39, $7,882.11, various items from the bill of particulars, and the jury did not come to their verdict by adding together the four columns on Exhibit 39."

Defendants contend that an important question is involved, to-wit:

"As to how far this theory of curing error by remittitur may be indulged without its being justly said that the court's remittitur arrives at a verdict by pure speculation as to which of the numerous items of appellee's claim the jury did wrongfully award; and how much was wrongfully awarded; and as to that amount which might be rightfully awarded on certain of the items and how much of that item the jury thought had been established by the proofs; so that the court's verdict on remittitur is an invasion of the defendants' constitutional right to have the damages awarded by a jury's verdict under a proper charge."

We find there is merit in defendants' position. The evidence in the case as to many of the items of

damage claimed by plaintiff was conflicting, and there was no way for the court to determine as to what items the jury found had been established by the proofs. This necessitates a reversal and the granting of a new trial for the assessment of damages only, under the rules of law applicable to the measurement of damages sustained by plaintiff for the wrongs complained of and established by him in this action.

The trial court by the granting of a new trial, unless a remittitur of verdict was filed by plaintiff in a considerable amount, confessed error in his charge to the jury, admitting that he had permitted the jury to go too far into the realm of speculation in arriving at the damages. We find that the court did give the jury the opportunity to indulge in too much speculation as to the elements and measure of damages sustained by plaintiff, and in view of the conflicting evidence as to many of the items, this error was not cured by requiring of plaintiff a remittitur of the verdict in the amount stated by the court.

The judgment is reversed and the case remanded for the assessment of plaintiff's damages under the rules of law applicable thereto. Defendants will recover costs to be taxed.

Sharpe, C. J., and Boyles, North, McAllister, Wiest, and Butzel, JJ., concurred. Bushnell, J., did not sit.