## SKIMIN *v.* FUELGAS COMPANY.

1. SALES—BOTTLED PROPANE GAS—DEPOSIT FOR EQUIPMENT.

Money paid seller of bottled propane gas by local distributor, as security deposits to insure return of containers and equipment did not constitute prepaid rental therefor but a returnable deposit upon surrender of the property title to which was specifically retained in the seller.

2. SAME—BOTTLED PROPANE GAS—CONTRACTS—DISTRIBUTOR'S CUSTOMERS.

Contracts entered into between distributor and its customers with reference to bottled propane gas were no part of distributor's contract with the seller, especially where such latter contract stated that it contained all the terms of the agreement between the parties and that any oral condition or understanding additional to or at variance therewith was void.

3. SAME—FUEL GAS—CONTRACTS—DISTRIBUTOR'S CUSTOMERS—PRINCIPAL AND AGENT.

The alleged custom and usage of the fuel gas trade as to a distributor's customers may not be allowed to change the written contract between the distributor and seller, where there is no privity of contract between the seller and the distributor's customers and such contract specifically provided that the distributor was not to be the seller's agent for any purpose and sold the merchandise on its own account.

4. DAMAGES—INTERFERENCE WITH BUSINESS—EVIDENCE.

Damages awarded distributor in suit to enjoin seller of bottled propane gas from making false statements and for damages for illegally interfering with the distributor's business *held*, not unreasonable in amount and within range of proofs as to amount of loss when 32 customers left it due to free

REFERENCES FOR POINTS IN HEADNOTES

[1]  46 Am Jur, Sales § 179.
[2]  12 Am Jur, Contracts § 246.
[3]  12 Am Jur, Contracts § 237.
[4]  30 Am Jur, Interference § 57.
[5, 6]  46 Am Jur, Sales §§ 615, 625.
[7]  15 Am Jur, Damages § 356.

contracts with defendant seller, amount of loss of profits and expense of equipment, expense of extra work to retain its customers and damage to business due to slander and false statements.

5. Same—Measure of Damages—Breach of Sales Contract.
The measure of damages for breach of sales contract is profits which the salesman might have realized had he been permitted to perform.

6. Same—Difficulty in Ascertainment.
Difficulty of ascertaining damages caused by breach of contract is no reason for their denial if there can be found in the testimony a reasonably certain basis for computing them; computation with mathematical exactness not being required.

7. Same—Measurement.
The fact that damages cannot be measured easily or with mathematical certainty or absolute accuracy is no ground for denying them.

Appeal from Iosco; Dehnke (Herman), J. Submitted April 15, 1954. (Docket Nos. 75, 76, Calendar Nos. 46,139, 46,140.) Decided June 7, 1954.

Bill by Jesse E. Skimin, doing business as Huron Hardware, as a successor plaintiff, against Fuelgas Company, a Michigan corporation, to enjoin illegal practice, for accounting and damages. Case consolidated on trial and appeal with replevin action for possession of equipment used in distribution of bottled gas. Decree for plaintiff. Defendant appeals. Affirmed.

*Herbert Hertzler,* for plaintiff.

*Bobier & Stewart,* for defendant.

Boyles, J. This is an appeal by the defendant Fuelgas Company from a decree for the plaintiff Jesse E. Skimin, doing business as Huron Hardware, being successor in interest to Huron Hardware,

a copartnership, and having been duly substituted as party plaintiff, in a chancery case heard by the trial court concurrently with a replevin suit started by the defendant Fuelgas Company against Huron Hardware, in which the hardware company had judgment. Both cases involve the same transactions. The decree in the chancery case adjudicates the entire matter by taking into consideration the judgment in replevin in favor of the defendant in replevin, Huron Hardware. By stipulations, the entire matter was consolidated for hearing by the trial court, and likewise consolidated here for decision on this appeal. The trial court entered a decree for this plaintiff, Huron Hardware, in the chancery case, which covered the judgment for Huron Hardware as the defendant in replevin.

Plaintiff Huron Hardware was a copartnership engaged in the retail hardware business at Oscoda, in Iosco county. The defendant Fuelgas Company is a corporation located at Flint, Michigan, selling bottled propane gas. For clarity, the plaintiff on this appeal will hereinafter be referred to as the hardware company, and the defendant Fuelgas corporation as the fuelgas company.

On May 5, 1949, the hardware company filed a bill of complaint in the circuit court for Iosco county in chancery to enjoin the fuelgas company from making false statements and for damages for illegally interfering with hardware company's business, for an accounting to determine what was due it from their business transactions, and for a decree for the payment thereof. Two days later the fuelgas company obtained from said court a writ of replevin directing the sheriff to take into custody certain fuelgas containers and regulators then in possession or control of the hardware company and deliver the same to the fuelgas company upon security given as required by law. Later, a return was waived

and a money judgment for the value asked. On the hearing of a motion to dismiss the replevin case, the court ordered it held in abeyance pending determination of the chancery case.

The litigation arises out of a written contract entered into by the parties in 1946, which designates the hardware company as an authorized fuelgas distributor for fuelgas company, to sell fuelgas and fuelgas appliances in Oscoda and surrounding territory. Thereafter, fuelgas company furnished the hardware company with its product, which the hardware company sold and distributed under the contract until in April, 1949, at which time hardware company notified fuelgas company that it was cancelling the contract, which both parties had the right to do upon notice, without good cause. The hardware company claimed that fuelgas company had breached the contract to furnish bottled gas and appliances, in many particulars. Upon the cancellation, both parties engaged in a bitter conflict for the customers for bottled gas which had been obtained by the hardware company.

The trial court, after an extended hearing, taking testimony applicable to both cases, entered judgment in the replevin case that fuelgas company was the owner of the property, that hardware company had a lien thereon, that the value of the property was $2,310 and the amount of the lien $3,157.60; that the defendant recover from the plaintiff therein $2,310.

In the chancery case, the trial court entered a decree enjoining the fuelgas company from making false statements about the hardware company or employing unfair trade practices, holding that the hardware company had sustained actual damages amounting to $1,516.85 as the result of the fuelgas company's misconduct, that the fuelgas customers which the hardware company had obtained were

the hardware's customers, not those of the fuelgas company, that the hardware company was entitled to repayment of $2,955.41 paid by it to fuelgas company as "deposits" on certain pressure tanks and equipment, less $2,310 which the court found to be due the hardware company in lieu of return, leaving a balance of $645.41 being owed by the fuelgas company to the hardware company on that account. The decree ordered the fuelgas company to pay the hardware company said sums of $1,516.85 and $645.41, totaling $2,255.36 together with interest. The fuelgas company appeals.

The first question raised by appellant for reversal is as follows:

"Were the sums of money paid to appellant, Fuelgas Company, Inc., by appellee, Huron Hardware, at time appellee obtained tanks and utilization equipment from appellant 'deposits,' and, as such, returnable to appellee when it surrendered the tanks and equipment, or were the said sums 'prepaid rentals,' to be retained by the appellant?"

Appellant claims that these sums of money paid to appellant by appellee were "prepaid rental" to be retained by the appellant. The trial court held otherwise, and decreed that the money belonged to the hardware company, that it had been paid to appellant as a security deposit to insure return of its property.

The provisions in the contract which control the decision of this question are as follows:

"1. The company (Fuelgas) hereby designates the distributor (Huron Hardware) as an authorized Fuelgas distributor at the town named above with the right, but not exclusive, to sell and distribute fuelgas and fuelgas appliances in said town and surrounding local trade area under the terms and conditions herein stated; * * *

"3. All fuelgas containers shall remain the property of the company, and the distributor shall account for and return to the company as promptly as possible all such containers, including those in the custody of distributor's customers. A reasonable charge based upon its replacement value will be made for each container when shipped to the distributor, same to be cancelled upon its return to the company; and if not returned within 12 months from date of shipment to distributor, then the company may require the distributor to pay such reasonable charge or a monthly rental to be fixed by the company until such container is returned.

"4. Fuelgas utilization equipment will be consigned to the distributor for distribution to fuelgas consumers in accordance with terms fixed from time to time by the company. The distributor will make a cash deposit on each such equipment, the amount thereof to be fixed by the company. All such equipment and parts thereof shall remain the company's property."

We agree with the trial court that the contract itself negatives appellant's claim that this money was paid for rental of equipment. Under the contract, fuelgas company was allowed to make a reasonable charge for containers, based on replacement value, to be "cancelled" upon their return to it. Hardware company was required to pay a "monthly rental" only on such containers as were not returned within 12 months. As to the other fuelgas equipment, the same purport was indicated in paragraph 4 of the contract. Hardware company was required to make a "cash deposit" on such equipment, in an amount to be fixed by fuelgas. In the replevin suit by the fuelgas company to obtain the return of its containers and equipment, admittedly its property under the contract, return was waived, its value to be determined by the court. The court found its value to be $2,310, and decreed that the fuelgas

company should be credited with this amount as against the amount which the court found to be owing by fuelgas to hardware. Appellant argues that the contracts entered into by hardware company with its customers are a part of the contract between hardware and fuelgas, that they have entered into a "collateral contract," by an oral understanding, parol proof of which should be received and allowed to control, notwithstanding the fact that the written contract between hardware and fuelgas provides that:

"This instrument contains all the terms of the agreement between the parties hereto, and any oral condition or understanding additional to or at variance herewith is void."

The fault in appellant's claim that these customer contracts belong to fuelgas is that fuelgas was not a party to the contracts between hardware and its customers, and no issue has been raised between hardware and its customers, as to such contracts or their effect. There is no merit in appellant's claim that hardware's customers were appellant's customers. There was no privity of contract between appellant and hardware's customers, and we are not in accord with appellant's claim that proof of "custom and usage" in the fuelgas trade should be allowed to change the written contract. Nor can fuelgas successfully claim that the hardware company entered into these customer contracts in its behalf, or as its agent. The written contract expressly provides that:

"7. Nothing herein shall be construed as making the distributor an agent for the company for any purpose whatsoever, both the facts and the understanding being that distributor is engaged in selling at retail, for distributor's own account and responsibility, merchandise bought from the company."

Finally, appellant claims that the trial court erred in the assessment of damages, that the hardware company did not prove damages with sufficient definiteness to support the award of $1,516.85 as actual damages sustained by hardware due to slander, false statements and unfair trade practices of the fuelgas company after the hardware company had given notice of cancellation. Much testimony was received as to occurrences thereafter, while the hardware company was endeavoring to retain its customers by furnishing a different bottled gas, and the fuelgas company was busy with equally strenuous efforts to have these customers continue using its product. The hardware company showed the amount it had lost where 32 customers left it, due to free contracts offered them by the fuelgas company; the amount of loss of profits and expense of equipment; expense of extra work to retain its customers; and damage to business due to slander and false statements by the fuelgas company. The amount of the award by the trial court was within the range of the proofs, and not unreasonable in amount.

"Measure of damages for breach of sales contract is profits which salesman might have realized had he been permitted to perform.

"Difficulty of ascertaining damages caused by breach of contract is no reason for their denial if there can be found in the testimony a reasonably certain basis for computing them; computation with mathematical exactness not being required." *Callender* v. *Myers Regulator Co.* (syllabi), 250 Mich 298.

"The fact that damages cannot be measured easily or with mathematical certainty or absolute accuracy

is no ground for denying them." *Kruger* v. *Agnor* (syllabus), 321 Mich 131.

Affirmed. Costs to appellee.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.