### G. C. KAY COMPANY v. STANDARD STEEL TREATING COMPANY.

1. APPEAL AND ERROR—NONJURY CASE—FINDING OF FACT—EVIDENCE —HEAT-TREATMENT OF TRUNNION PARTS.

Trial judge's finding in nonjury action that certain trunnion parts had not been properly heat-treated by defendant under contract for such operation and that such parts were not accepted nor paid for by party to whom plaintiff was obligated to supply them is affirmed, where the evidence does not preponderate to the contrary, since the trial judge saw and heard the witnesses as to the issues of fact decided.

2. DAMAGES—MITIGATION—EVIDENCE.

Evidence presented in nonjury action for damages for losses sustained by defendant's failure to properly heat-treat certain trunnion parts *held,* to show no failure on plaintiff's part to use reasonable efforts to mitigate damage.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 900.
[4] 47 Am Jur, Set-off and Counterclaim § 24 *et seq.*

3. CONTRACTS—LIMITATION ON LIABILITY—PRINCIPAL AND AGENT—
EVIDENCE.

 Claimed limitation of liability on part of defendant who con-
 tracted with plaintiff to heat-treat certain trunnion parts which
 plaintiff contracted to furnish tank manufacturer *held*, ineffec-
 tive as to plaintiff, where record fails to show the limitation
 had been sent to or called to plaintiff's attention, and supplier
 of some of such parts to plaintiff to whom the limitation had
 been given was not an agent of plaintiff and did not supply
 any of the parts which became the subject of the action for
 damages for improper heat-treatment operation.

4. SET-OFF AND RECOUPMENT—NONJURY CASE—MATTERS ARISING
OTHERWISE THAN OUT OF SUBJECT MATTER OF INSTANT ACTION.

 Amount of set-off arising from work defendant had done pre-
 viously for plaintiff and not upon the work which is the subject
 matter of the instant nonjury case and liability for which was
 admitted by plaintiff is allowed in reduction of the sum awarded
 against defendant as damages suffered by plaintiff for improper
 heat-treatment of certain trunnion parts by defendant.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted January 9, 1958.   (Docket No. 34, Calen-
dar No. 47,180.)   Decided April 14, 1958.

Action by G. C. Kay Company, formerly Geo. C.
Knight Company, a Michigan corporation, against
Standard Steel Treating Company, a Michigan cor-
poration, for damages arising from contract for serv-
ices in manufacturing process.   Claim of set-off.
Judgment for plaintiff.   Defendant appeals.   Af-
firmed in part, reversed in part and remanded.

*Charles Rubiner* and *Arthur James Rubiner,* for
plaintiff.

*Kelly, Kelly & Kelly (Howard L. Ellis* and *Sig-
mund A. Beras,* of counsel), for defendant.

EDWARDS, J.   Plaintiff G. C. Kay Company brought
an action in assumpsit, claiming damages as the
result of defendant's failure properly to perform a

contract for heat-treating certain tank parts. From a judgment in plaintiff's favor entered by the trial judge hearing the matter without a jury, defendant appeals.

Plaintiff company had an order from the Fisher Body Division of the General Motors Corporation to furnish trunnion pins to be used in the firing mechanism of tanks for the United States ordnance department. In seeking to supply these trunnions, plaintiff company, in March of 1953, entered into an oral contract with defendant Standard Steel Treating Company to heat-treat the trunnions to a specific hardness. Confirming this contract, plaintiff, on March 11, 1953, sent a purchase order to Standard Steel Treating Company, which is exhibit 1 in this proceeding, and which read as follows:

"To harden and draw to specifications RHC 30–35, part number 7365202, price not to exceed $2 on small quantities. Advise price on larger quantities."

The specifications referred to a certain Rockwell test for hardness of steel.

The original trunnion pins which defendant processed under the plaintiff's order were delivered to defendant from a supplier, the Bayley Products Company. Defendant presented testimony that it had previously sent to the Bayley Products Company a confirmation of the $2 price per pin for heat-treating, which confirmation contained words limiting liability to the amount of Standard's contract. It is undisputed on this record that this limitation was never served upon the plaintiff company either before or after the purchase order of March previously referred to, and that the pins which are the subject matter of this dispute did not come from the Bayley Products Company but were supplied by a subsequent supplier, the Panter Company.

The Standard Steel Treating Company entered upon the performance of this contract and apparently heat-treated a number of trunnions to the proper hardness. However, it appears by stipulation of the parties that at 1 point, in June of 1953, 554 trunnion pins were hardened by Standard to a hardness of RHC 40–43, instead of RHC 30–35, on the Rockwell test, as provided by the purchase order, and that as a result these pins were refused by Fisher Body.

After rejection by Fisher of the 554 trunnion pins because of excessive hardness, Standard then sought to "redraw" a quantity of these pins to reduce the hardness to that specified. "Redrawing" represented reheating the pieces to attempt to bring down the hardness. The number thus redrawn is stipulated by the parties to be 324. We will henceforth refer to this group of pins as "Group A."

Plaintiff presented testimony to indicate that it never authorized the attempt at redrawing the pins in Group A.

The testimony also indicates that this operation was something less than successful. Plaintiff claimed it resulted in unacceptable oxidization of the pins, as well as variation from size and shape.

"*A.* When the pin came in it was discolored and in checking I found that they had moved and were out of tolerance. We had a concentricity to hold between 2 diameters and they had moved to a point where they were no more concentric.

"*Q.* That means roundness?

"*A.* Yes."

As to the balance of the 554 trunnion pins originally heat-treated to excessive hardness (which we refer to as Group B), testimony as to the ultimate disposition of these is most confusing. The president of plaintiff G. C. Kay Company testified, as to

the Group B pins, that Fisher Body accepted them under a deviation authorized by the ordnance department and paid for them. On the other hand, the plant engineer for plaintiff testified that most of them were not accepted by Fisher, and that they were not paid for. Just why, however, does not appear from his testimony.

Plaintiff sued for $7,482.25 damages. The parties stipulated to most of the items making up this sum, without defendant, of course, agreeing to any liability therefor. From the stipulation, it appears that the total price per pin to be paid by Fisher Body to plaintiff Kay Company was $16.65. In addition, there was an item of $156.95 which plaintiff had spent on an unsuccessful attempt to salvage some of the Group A pins by hard chrome plating and re-threading them.

Dealing with the question of damages, the trial judge said as follows:

"Reviewing the entire matter and the numerous exhibits in this case, I feel that a judgment in the sum of $5,500 will be ample reimbursement for plaintiff's claimed losses. Judgment may be entered in this amount with costs to be taxed in favor of plaintiff and against the defendants."

It is apparent that this judgment represented damages to plaintiff for total loss of the 324 "redrawn" trunnion pins in Group A, at $16.65 each, plus the $156.95 item referred to. By implication the judgment also represented a finding that plaintiff had failed to carry the burden of proof on damages as to the pins in Group B. As to this matter, plaintiff brings no cross appeal.

The evidence apparently convinced the trial judge that the pins in Group A were not heat-treated by defendant to specifications, were not accepted by Fisher Body, and were not paid for.

Since we cannot say on this record that the evidence preponderates to the contrary, we affirm the trial judge who saw and heard the witnesses as to the issues of fact which he decided. *Jones* v. *Eastern Michigan Motorbuses,* 287 Mich 619; *Barnes* v. *Beck,* 348 Mich 286; *Pogletke* v. *Schwanz,* 349 Mich 129.

Even so, we agree, of course, with appellant's contention that plaintiff had the duty to use all reasonable efforts to mitigate damages. *Chandler* v. *Allison,* 10 Mich 460; *Rich* v. *Daily Creamery Co.,* 296 Mich 270 (134 ALR 232); *Carter* v. *State Farm Mutual Automobile Ins. Co.,* 350 Mich 535. This, plaintiff obviously undertook by joining defendant in seeking and securing a deviation from Fisher Body and the ordnance department. In relation to the Group A pins which defendant somewhat precipitously sought to redraw, plaintiff also made efforts —even though unsuccessful—at chrome plating and rethreading. In short, no failure on plaintiff's part to use reasonable efforts to mitigate damage appears from this record.

Defendant and appellant presents 2 other legal issues. First, it asserts that its liability on this contract is limited to "the value of the services performed" ($2 per pin) by its sending the Bayley Products Company a price quotation containing such limiting language on a printed form.

This quotation defendant sent to Bayley Products on February 13, 1953. The purchase order from plaintiff to defendant was dated March 11, 1953, and the disputed parts were first heat-treated by defendant in June of 1953 and were furnished by a different supplier. As previously noted, the record is devoid of any evidence that this limitation was ever sent to or called to the attention of plaintiff. Plainly, unless the Bayley Products Company could be regarded as

plaintiff's agent, the limitation provision never became a part of the contract between plaintiff and defendant. Any effect of the claimed limitation was defeated by lack of privity. *Woods* v. *Ayres,* 39 Mich 345 (33 Am Rep 396); *Skimin* v. *Fuelgas Co.,* 339 Mich 523; 12 Am Jur, Contracts, § 273.

Nor do we find evidence from which the trial court could have found that the Bayley Products Company was acting as plaintiff's agent in negotiating or making this contract. The Bayley Products Company did supply some of the first trunnion pins treated by defendant. It does not appear, however, that they chose Standard or gave the order for heat-treating these parts, or in any way consented to act, or acted, on plaintiff's behalf in regard to this contract. 1 Restatement, Agency, § 7.

See, also, *Stephenson* v. *Golden,* 279 Mich 710.

We find neither agency nor privity of contract and, hence, will not deal with the question of the effect of the printed limitation.

The last of defendant's questions on appeal deals with its claim of a $600 set-off. As to this sum, plaintiff's answer to defendant's set-off and recoupment admitted liability:

"Plaintiff admits that it is indebted to defendant in the sum of $600, the said sum being a balance due upon work previously performed and not upon work which is the subject matter of the instant law suit."

We do not find justification in the record for the trial court failing to include this item in his computation of the judgment, and feel that the judgment should be reduced by the admitted amount of the set-off.

We, therefore, affirm the findings and judgment of the trial judge, except as to the item noted above, and remand this case to the trial court for entry of

judgment amended in accordance with this opinion.

Dethmers, C. J., and Carr, Smith, Black, Voelker, and Kavanagh, JJ., concurred.

Kelly, J., did not sit.