Bert NICOLA and Salem Nicola, Plaintiffs
v.
and Appellants,

John MEISNER and Loren Anderson, co-partners doing business as Meisner-Anderson Company, Defendants and Respondents.

No. 7632.

Supreme Court of North Dakota.

Aug. 9, 1957.

William S. Murray, Bismarck, for appellants.

Cox, Pearce & Engebretson, Bismarck, for respondents.

SATHRE, Judge.

The plaintiffs are owners of a building on the east side of 6th street between Main and Broadway in the City of Bismarck. This building consists of a first floor and basement. In the basement of the building are eight bowling alleys, which were installed when the building was built in 1950. In November 1953, the plaintiffs had decided to build an additional room at the east end of the basement in their building. The east wall of the building was immediately adjacent to a public alley, and therefore a room could be built only underneath the alley, and the plaintiffs secured permission from the City of Bismarck to construct such room underneath the alley, by putting a roof on said room strong enough to support public traffic in the alley. During the same month November 1953, the plaintiff Bert Nicola, entered into an oral agreement with Loren Anderson, one of the members of a copartnership doing business under the name of Meisner-Anderson Construction Company, defendant, whereby the defendant company agreed to build a room in accordance with suggested plans provided by the plaintiffs. No price was agreed upon and the only plan was a sketch consisting of an outline of the plan for the construction of the room. This plan or sketch however was lost before the trial. There was no architect however engaged on this particular job.

When the excavation for the room had been completed it was discovered that there were two steam pipes buried in the alley running north and south which belong to Montana-Dakota Utilities Company as a part of their system for the distribution of steam for heating purposes. These two steam pipes extended across the proposed room from the north side to the south side from five to six feet above the floor. The excavation for the room left these steam pipes unsupported across the width of the room causing them to sag and making it necessary to have work done by the Montana-Dakota Utilities Company to straighten and provide supports for the steam pipes. The plaintiffs made arrangements to have this work done by the Montana-Dakota Utilities Company.

The next step after excavation for the room was the pouring of concrete walls on the north, east and south sides of the excavation. The west side was the existing wall of the building. The supports for the steam pipes had not been installed by the Montana-Dakota Utilities Company when the walls were poured; a space about 12 inches square was left in the north wall by means of a wooden form around the larger steam pipe and the remainder of the wall was poured. The Meisner Company had completed the walls, floor, and ceiling on or about the 15th day of December 1953. Thereafter the plaintiffs made arrangements with the Montana-Dakota Utilities Company to do the work necessary to install the supports for the steam pipes. The space or opening around these steam pipes was not filled with any concrete or any other material until after a heavy rain storm which occurred on June 27, 1954.

The rain storm caused water, sand and dirt to run into the basement through the opening around the steam pipes. The basement was flooded and considerable damage resulted to the eight bowling alleys in plaintiffs' basement. It is the contention of the plaintiffs that it was the duty of the defendants to cement the opening around the steam pipes and that the failure of the defendants to do so made them liable to the plaintiffs for the resulting damages to the bowling alleys and to merchandise stored in the basement. The defendants however deny that they were ever notified by the plaintiffs that the repair work on the pipes was done, and they allege that any damages resulting from the rain storm were due entirely to the failure of the plaintiffs to fill the opening around the steam pipes, although they knew at all times the danger in leaving the open-

-ing uncovered, and that therefore the plaintiffs could not recover.

The case was tried to the court and a jury.

When the plaintiffs had rested, and again at the close of all of the testimony the defendants made a motion for a directed verdict in their favor. Plaintiffs resisted the motion and it was denied by the court. The jury returned a verdict for the plaintiffs in the sum of $2,900 and judgment was entered upon the verdict.

Thereafter and in due time the defendant served upon the plaintiffs' counsel a notice and motion for judgment notwithstanding the verdict and for a dismissal of the action, or in the alternative for a new trial. On March 12, 1956 the trial court granted the motion and made its order vacating and setting aside the judgment previously entered in favor of the plaintiffs, and on the same date judgment was entered pursuant to said order in favor of the defendants vacating the aforesaid judgment in favor of the plaintiffs and for dismissal of the action. Thereafter and on June 19, 1956 the plaintiff served notice of appeal on the defendants from the judgment entered March 12, 1956 in favor of the defendants.

The plaintiffs assign three specifications of error but they may all be stated in one proposition: That the court erred in granting the motion of the defendant for judgment notwithstanding the verdict and in setting aside and vacating the judgment entered in favor of the plaintiffs and for dismissal of their action.

Before proceeding to a consideration of the merits of the case we think it proper to dispose of a procedural question raised by the defendant.

In the brief of the defendant it is argued that the appeal taken by the plaintiffs herein is in effect an appeal from the order granting the motion of the defendant for judgment notwithstanding the verdict; and since the order was made on March 12, 1956 the time for appeal had expired and that there-fore the appeal should be dismissed. The plaintiffs in their brief stated:

"From the district court's order granting motion for judgment notwithstanding the verdict, plaintiffs now appeal."

However the notice of appeal herein states that:

"Plaintiffs do appeal to the Supreme Court of the State of North Dakota from the judgment of the district court entered herein on the 12th day of March 1956 and from the whole thereof."

The specifications of error which we referred to herein state specifically that:

"The court committed error in making its order ordering judgment in favor of the defendant and against the plaintiffs dismissing plaintiffs action, and setting aside and vacating the judgment entered for the plaintiffs against the defendants; in entering judgment in favor of the defendants and against the plaintiffs dismissing the plaintiff's action, and setting aside and vacating the judgment entered for the plaintiffs against the defendants."

■ The order granting the motion of the defendants for judgment notwithstanding the verdict was the basis for the judgment vacating and setting aside the judgment first entered in favor of the plaintiffs. Plaintiffs appealed from the latter judgment within the statutory time for appeal from judgments. Under section 28-2728, NDRC 1943 the Supreme Court may properly review an order granting a motion for judgment notwithstanding the verdict on appeal from a judgment entered on such order. Said section provides:

"Upon an appeal from a judgment, the supreme court may review any intermediate order or determination of the court below which involves the merits and necessarily affects the judgment appearing upon the record trans-

mitted or returned from the district court, whether the same is excepted to or not. It shall not be necessary in any case to take any exceptions or to settle a statement of the case to enable the supreme court to review any alleged error which without a statement would appear upon the face of the record."

■ Under this section this court has consistently held that all orders or rulings affecting the mode of trial are reviewable upon an appeal from the judgment when made a part of the record on appeal. Schutt v. Federal Land Bank, 71 N.D. 640, 3 N.W. 2d 417; Ellingson v. Northwestern Jobbers Credit Bureau, 58 N.D. 754, 227 N.W. 360; Schaff v. Kennelly, N.D., 69 N.W.2d 777. The appeal in the instant case is taken from the judgment entered on the order granting judgment notwithstanding the verdict, and said order being a part of the record is reviewable on this appeal. This leaves but one question or issue for consideration, namely, whether or not, upon the record and the evidence the trial court was correct in granting the motion of the defendants for judgment notwithstanding the verdict.

The plaintiff-appellants contend that there is a conflict in the evidence on the question whether under their agreement it was the duty of the defendants to close the opening around the steam pipes which has been referred to herein. The plaintiff Bert Nicola testified that he repeatedly requested the foreman of the defendants, Waldo Carson, to come and finish the job, and that on one occasion he asked the defendant Loren Anderson to come and finish the job of closing the opening around the steam pipes. The defendants deny that they were ever notified that Montana-Dakota had straightened the pipes and provided the necessary supports, so that the opening in question could be permanently filled with concrete. They further deny that the plaintiffs at any time requested them to close the opening. The plaintiffs contend, however that the conflict in the evidence presented a question of fact for the jury; that the jury having found

for the plaintiffs, the trial court erred in granting defendants' motion for judgment notwithstanding the verdict.

The defendants, however, take the position that the doctrine of "avoidable consequences" is applicable to the facts in this case; that the plaintiffs are barred from recovering damages because they failed and neglected to take the simple steps obviously necessary to protect their property; that therefore as a matter of law they were not entitled to damages. The trial court held that the doctrine of avoidable consequences was applicable and on that ground granted defendants' motion for judgment non obstante and accordingly dismissed plaintiffs' action.

■ The doctrine of avoidable consequences upon which the defendants rely is stated in 15 Am.Jur., Damages, Sec. 27, pages 420–422.

"One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover; or, as the rule is sometimes stated, he is bound to protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided. It is also an elementary principle that a party claiming damages must not be in fault in contributing to them by his own want of proper care; and such care must extend to the protection from further loss after the act complained of. If he fails to use such diligence, his negligence is regarded as contributing to his injury, and, furthermore, such damages as could have been so avoided are

not regarded as the natural and probable result of the defendant's acts."

This rule is applicable to damages to property, and is stated thus in 15 Am. Jur., Damages, Sec. 40, page 439.

"Under the rule requiring one injured by the negligence or wrongful act or omission of another to use reasonable efforts to lessen the resulting damage, it is the duty of one whose property is injured or threatened with injury to take reasonable precautions and to make reasonable expenditures to guard against or minimize such injury; and if he fails to do so, he cannot recover damages for any injuries which by the exercise of reasonable care he could have avoided. In other words, the law will not allow one to sit idly by and see his property destroyed through forces negligently set in motion by another and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster."

The plaintiff Bert Nicola, admitted, that the last time he requested the defendants to close the opening around the steam pipes was in March 1954. We quote from his testimony:

"Q. And did any water come in this hole? A. No.

"Q. Not a bit? A. Oh, might have seeped some in.

"Q. Some of it might have seeped in? A. Yes.

"Q. Despite that fact you didn't fill it in with anything? A. No."

In the case of Rich v. Daily Creamery Co., 296 Mich. 270, 296 N.W. 253, 258, 134 A.L.R. 232, the Supreme Court of Michigan said:

"There is no question but that it is a well-established rule that in case of a breach of contract the injured party must make every reasonable effort to minimize the damages suffered and that it would be the duty of the court upon request to so charge the jury."

And in Shamblen v. Great Lakes Pipe Line Co., 158 Neb. 752, 64 N.W.2d 728, 731, the Supreme Court of Nebraska said:

"The established rule is: 'Where two parties have made a contract, which one of them has broken, the other must make reasonable exertions to render his injury as light as possible; and he cannot recover from the party breaking the contract, damages which would have been avoided, had he performed such duty.' Uhlig v. Barnum, 43 Neb. 584, 61 N.W. 749. See, also Marcell v. Midland Title Guarantee & Abstract Co., 112 Neb. 420, 199 N.W. 731."

It is established by the evidence in this case, beyond dispute, that for six months before the rain storm which caused the damage, the plaintiffs knew that the opening around the steam pipes had not been closed; yet they took no action. Even if it is true that in March they requested the defendant to make the repair, they themselves took no action to close the opening, notwithstanding that they knew that water was seeping through the opening into the basement.

The defendants contend that closing the opening was not a condition to be performed by them under their agreement with the plaintiffs to construct the room in question. It is also undisputed that the defendant billed the plaintiffs for the services in constructing and completing the room involved here and that plaintiffs paid the bill in full April 28, 1954. On cross examination of Mr. Yule, defendant's office manager and bookkeeper, he was asked: "How much was this bill that Mr. Nicola paid on April 28, 1947? A. It was sixteen hundred and some odd dollars.

"Q. And that was the price of building the room, is that right? A. Yes sir."

It is clear from the quoted testimony that the payment made by the plaintiffs was in full for the construction of the basement room. The plaintiffs made no objection because the opening around the pipes was not closed when they paid in full defendant's statement of account for constructing the room.

■ The plaintiffs had complete control and possession of the room since December 1953, and they knew that the opening around the steam pipes had not been closed; they knew that when it rained the water seeped in through the opening; yet they took no steps to protect their property and to have the opening closed. The plaintiff Bert Nicola admitted that the last time he had a conversation with the defendants about closing the opening around the steam pipes was in March 1954. The plaintiffs never requested the defendants thereafter to close the opening, nor did they attempt to secure anyone else to do it. Upon the record before us we conclude that the plaintiffs were negligent in taking no steps to protect their property and that the doctrine of avoidable consequences applies to facts in this case. The trial court correctly granted the motion of the defendants for judgment notwithstanding the verdict and the judgment is affirmed.

GRIMSON, C. J., BURKE and JOHNSON, JJ., and MARK H. AMUNDSON, District Judge, concur.

MORRIS, J., deeming himself disqualified, did not participate, MARK H. AMUNDSON, one of the Judges of the Sixth Judicial District, sitting in his stead.