Burke, J.
In 1932 Mrs. Erna Menzel and her husband pur- ¡V chased a painting by Marc Chagall at an auction in Brussels, j Belgium, for 3,800 Belgian francs (then equivalent to about $150). When the Germans invaded Belgium in 1940, the Men-, zels fled and left their possessions, including the Chagall painting, in their apartment. They returned six years later and found that the painting had been removed by the German authorities and that a receipt for the painting had been left. The location of the painting between the time of its removal by the Germans in 1941 and 1955 is unknown. In 1955 Klaus Peris) and his wife, the proprietors of a New York art gallery, purchased the Chagall from a Parisian art gallery for $2,800.) The Peris knew nothing of the painting’s previous history and1 made no inquiry concerning it, being content to rely on the reputability of the Paris gallery as to authenticity and title. In October, 1955 the Peris sold the painting to Albert List for $4,000. However, in 1962, Mrs. Menzel noticed a reproduction j *94 of the Chagall in an art book accompanied by a statement that the painting was in Albert List’s possession. She thereupon demanded the painting from him but he refused to surrender it to her.
Mrs. Menzel then instituted a replevin action against Mr. List and he, in turn, impleaded the Peris, alleging in his third-party complaint that -they were liable to him for breach of an implied warranty of title. At the trial, expert testimony was introduced to establish the painting’s fair market value at the time of trial. The only evidence of its value at the time it was purchased by List was the price which he paid to the Peris. The trial court charged the jury that, if it found for Mrs. Menzel against List, it was also to “assess the value 'of said painting / at such an amount as you believe from the testimony represents j its present value. ” The jury returned a verdict for Mrs. Men-i zel and she entered a judgment directing the return of the 1 painting to her or, in the alternative, that List pay to her the \ value of the painting, which the jury found to be $22,500. (List has, in fact, returned the painting to Mrs. Menzel.) In addition, the jury found for List as against the Peris, on his third-party i complaint, in the amount of $22,500, the painting’s present i 1 value, plus the costs of the Menzel action incurred by List.
The Peris appealed to the Appellate Division, First Department, from that judgment and the judgment was unanimously modified, on the law, by reducing the amount awarded to List to $4,000 (the purchase price he had paid for the painting), with interest from the date of the purchase. In a memorandum, the Appellate Division held that the third-party action was for breach of an implied warranty of quiet possession and, accordingly, held that the Statute of Limitations had not run on List’s claim since his possession was not disturbed until the judgment for Mrs. Menzel. In addition, the court held that the “applicable measure of damages was the price List paid for the painting at the time of purchase, together with interest ”, citing three New York cases (Staats v. Executors of Ten Eyck, 3 Caines 111, 113; Armstrong v. Percy, 5 Wend. 535; Case v. Hall, 24 Wend. 102).
List filed a notice of appeal as of right from the unanimous modification insofar as it reduced the amount of his judgment to $4,000, with interest from the date of purchase. The Peris filed a *95 notice of cross appeal from so much of the Appellate Division’s order as failed to dismiss the third-party complaint, denied costs and disbursements and fixed the date from which interest was to run on List’s judgment. The Peris have now abandoned the cross appeal as to the failure to dismiss the third-party complaint and the denial of costs and disbursements, leaving only the issue as to the date from which interest should run.
List’s appeal and the Peris’ cross appeal present only questions of law for resolution, the facts having been found by the jury and affirmed by the Appellate Division (its modification was on the law as to the proper measure of damages and the running of interest). The issue on the main appeal is simply what is or should be the proper measure of damages for the breach of an implied warranty of title (or quiet possession) in the sale of personal property. The cases cited by the Appellate Division do not hold that the measure of damages is the purchase price plus interest. The Staats case (supra) was an action for breach of a real property covenant in which there was dicta to the effect that the rule was the same for personal property. The dicta was compromised one year later by the same jurist (Chief Justice Kent) who wrote the opinion in Staats in Blasdale v. Babcock (1 Johns. 517 [1806]) where it was held that the buyer was entitled to recover in damages the amount which he had been compelled to pay to the true owner, the actual value of the chattel. In Armstrong v. Percy (5 Wend. 535, supra) the buyer recovered the purchase price but only because the chattel, a horse, was found to have depreciated in value below the price paid. In Case v. Hall (24 Wend. 102, supra), there is contained a statement which is pure dicta to the effect that warranty damages are the purchase price (the action was in contract for .goods sold and delivered). The parties have cited no New York case which squarely meets the issue and it is, therefore, concluded that, contrary to the countterassertions of the parties, neither “purchase plus interest” (Peris) nor “ value at date of dispossession ” (List) is presently the law of this -State. In fact, there is a marked absence of case law on the issue. One legislative source has described this paucity of case law with the understatement that “ [t]he implied warranty of title under the Uniform Sales Act [N. Y. Personal Property Law, § 94] has seldom been invoked.” *96 (1956 Report of N. Y. Law Rev. Comm., Vol. 1, p. 387, n. 68,, citing Pinney v. Geraghty, 209 App. Div. 630, a case dealing with the effect of the vendor’s ignoring a vouching-in notice.) Furthermore, the ease law in other jurisdictions in this country provides no consistent approach, much less ‘‘ rule ’ ’, on this issue and it is difficult even to add up jurisdictions to pinpoint a “ majority ” and a “ minority ”. One attempt to collect and organize the law in this country on this issue concludes that there are at least four distinct “ rules” for measuring the damages flowing from the breach of a personal property warranty of title: purchase price plus interest; “ value ”, without specification as to the time at which value is to be determined; value at the time of dispossession; and value at the time of the sale (Ann., Breach of Warranty of Title — Damages, 13 ALR 2d 1369). Interestingly enough, the annotator was able to find New York cases each of which used language which would apparently suggest that a different one of these four “ rules ” was the rule. (Ann., supra, p. 1380.) In the face of such unsettled and unconvincing “precedent”, the issue is one which is open to resolution as a question which is actually one of first impression.
At the time of the sale to List and at the commencement of the Mensel replevin action, there was in effect the New York counterpart to section 13 of the Uniform Sales Act (N. Y. Personal Property Law, § 94 [PPL]) which provided that “In a contract to sell or a sale, unless contrary intention appears, there is
1. An implied warranty on the part of the seller that * * * he has a right to sell the goods * * *
2. An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale”.
In addition, section 150 of the PPL provided for remedies for breach of warranty and subdivision 6 provided: “ The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty ”. Subdivision 7 applies, by its terms, only to a breach of warranty of quality and is, therefore, not controlling on the question of damages for breach of warranty of title and quiet enjoyment. (3 Williston, Sales [rev. ed.], *97 § 615, n. 9.) Thus, the Peris’ reliance on this subdivision is misplaced. The Peris contend that the only loss directly and naturally resulting, in the ordinary course of events, from their breach was List’s loss of the purchase price. List, however, contends that that loss is the present market value of the painting, the value which he would have been able to obtain if the Peris had conveyed good title.' The Peris support their position by reference to the damages recoverable for breach of. the warranty of quiet possession as to real property. However, this analogy has been severely criticized by a leading authority in these terms: ‘ ‘ This rule [limiting damages to the purchase .price plus interest] virtually confines the buyer to rescission and restitution, a remedy to which the injured buyer is undoubtedly entitled if he so elects, but it is a violation of general principles of contracts to deny him in an action on the contract such damages as will put Mm in as good a postion as he would have occupied had the contract been kept.” (11 Williston, Contracts [3d ed.], § 1395A, p. 484 [emphasis added].) Clearly, List can only be put in the same position he would have occupied if the contract had been kept by the Peris if he recovers the value of the painting at the time when, by the judgment in the main action, he was required to surrender the painting to Mrs. Menzel or pay her the present value of the painting. Had the Warranty been fulfilled, i.e., had title been as warranted by the Peris, List would still have possession of a painting currently worth $22,500 and he could have realized that price at an auction or private sale. If List recovers only the purchase price plus interest, the effect is to put him in the same position he would have occupied if the sale had never been made. Manifestly, an injured buyer is not compensated when he recovers only so much as placed him in status quo ante since such a recovery implicitly denies that he had suffered any damage. This rationale has been applied in Massachusetts in a case construing a statute identical in language to section 150 (subd. 6) of the PPL where the buyer was held entitled to the value ‘ ‘which [he] lost by not receiving a title to it as warranted. * * * His loss cannot be meas- ■ ured iby the [price] that he paid for the machine. He is entitled to the benefit of his bargain ” (Spillane v. Corey, 323 Mass. 673, 675 [1949]; see, also, Pillgrene v. Paulman, Inc., 45 Del. 225- *98 226 [1950] [‘ ‘ The purpose of compensatory damages is to place the buyer in as good condition as he would have occupied had the title been good.”]). This measure of damages reflects what the buyer has actually lost and it awards to him only the loss which has directly and naturally resulted, in the ordinary course of events, from the seller’s breach of warranty.
An objection raised by the Peris to this measure of damages is that it exposes the innocent seller to potentially ruinous liability where the article sold has substantially appreciated in value. However, this ‘ ‘ potential ruin ’ ’ is not beyond the control of the seller since he can take .steps to ascertain the status of title so as to satisfy himself that he himself is getting good title. (Mr. Peris testified that to question a reputable dealer as to his title would be an “insult.” Perhaps, but the sensitivity of the art dealer cannot serve to deprive the injured buyer of compensation for a breach which could have been avoided had the insult been risked.) Should such an inquiry produce no reasonably reliable information as to the status of title, it is not requiring too much to expect that, as a reasonable businessman, the dealer would himself either refuse to buy or, having bought, inform his vendee of the uncertain status of title. Furthermore, under section 94 of the PPL, the seller could modify or exclude the warranties since they arise only1 ‘ unless contrary intention appears ’ ’. Had the Peris taken the trouble to inquire as to title, they could have sold to List subject to any existing lawful claims unknown to them at the time of the sale. Accordingly, the “prospects of ruin” forecast as flowing from the rule are not quite as ominous as the argument would indicate. Accordingly, the order of the Appellate Division should be reversed as to the measure of damages and the judgment awarding List the value of the painting at the time of .trial of the Mensel action should be reinstated.
On the cross appeal by the Peris, the issue is as to the time from which interest should run on the judgment in favor of List against the Peris. The Appellate Division indicated that interest should be recovered from the date of purchase in October, 1955, but it did so only in conjunction with its determination that the measure of damages should be the purchase price paid by List on that date. Manifestly, the present-value measure of damages has no necessary connection with the date of pur *99 chase and is, in fact, inconsistent with the running of interest from the date of purchase since List’s possession was not disturbed until the judgment directing delivery of the painting to Mrs. Menzel, or, in the alternative, paying her the present value of the painting. Accordingly, List was not damaged until that time and there is no basis upon which to predicate the inclusion of interest from the date of purchase. Accordingly, on the cross appeal, the order of the Appellate Division, insofar as it directed that interest should run from the date of purchase, should be reversed and interest directed to be included from the date on which Mrs. Menzel’s judgment was entered, May 10, 1966.
Judges Scileppi, Bergan, Breitel and Jasen concur; Chief Judge Fuld and Judge Keating taking no part.
Order reversed, with costs to third-party plaintiff-appellant-respondent, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.