No. 47,507

Warren Ricklefs, *Appellant*, v. Ronald D. Clemens, *Appellee*, (Motor City Motors, Inc., *Defendant.*)

(531 P. 2d 94)

Opinion filed January 25, 1975.

*Robert F. Duncan,* of Duncan, Senecal & Bednar, Chartered, of Atchison, argued the cause, and *Robert J. Bednar,* of the same firm, was with him on the brief for the appellant.

*William J. Brady,* of Stillings, Caplinger & Brady, Chartered, of Atchison, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This appeal requires the determination of the proper measure of damages to be applied in an action for breach of warranty of title brought by the purchaser of a stolen automobile against the seller.

On March 26, 1971, defendant-appellee (Ronald D. Clemens) sold the automobile in question—a Chevrolet Corvette Stingray 2-

door coupe titled as a 1969 model, to plaintiff-appellant (Warren Ricklefs) for $1,500.00 cash and a trade-in allowance of $2,400.00 for plaintiff's 1969 Pontiac. Clemens executed a certificate of title warranting the title to be free from all liens and encumbrances except as stated in the assignment. Ricklefs operated the automobile until December 1, 1971, when he was notified by an agent of the Federal Bureau of Investigation that the automobile was stolen. The agent also informed plaintiff that the automobile was a 1968, rather than a 1969 model. Plaintiff did not use the automobile after December 1, 1971, for the reason, plaintiff testified, that the agent had told him he might be arrested. Plaintiff claims that he made demand on Clemens for restitution but was refused.

On February 14, 1972, plaintiff filed this action against Clemens. In his petition plaintiff alleged that he was entitled to "complete restitution and has suffered damages in the sum of Three Thousand Nine Hundred Dollars ($3,900.00)." Plaintiff also prayed for such other and further relief as to the court might seem equitable.

On March 13, 1972, defendant Clemens filed his answer alleging that he had purchased the automobile from Motor City Motors, Inc., of Kansas City, Missouri for $2,325.00; that he was given a certificate of title and had no notice whatsoever, either express or implied, of any defect in the title or any encumbrance effecting the title to the automobile. Defendant prayed that plaintiff take naught by his suit.

After defendant's answer was filed, plaintiff filed a motion for summary judgment.

In the meantime, an action was filed against plaintiff (Ricklefs) by Carol A. Romero, Kenneth J. Rhines and the United States Fidelity & Guaranty, a corporation, (hereafter referred to as USF&G). This petition alleged that the automobile was purchased by Romero and Rhines from Bill Allen Chevrolet in North Kansas City, Missouri on January 7, 1971, for $3,295.00; that while the automobile was on the Bill Allen lot awaiting repairs, it was stolen; that USF&G, insurance carrier for Bill Allen, paid Romero and Rhines $3,295.00 and took an assignment of all interest in the automobile; plaintiffs (Romero, Rhines and USF&G) prayed for delivery of the automobile from Ricklefs to USF&G, or in the alternative for judgment against Ricklefs in the amount of $3,295.00.

Ricklefs's motion for summary judgment in his action against Clemens was argued on April 3, 1972. The court took the matter

under advisement and filed its memorandum decision on May 3, 1972. Noting the entangled facts which had developed, the trial court observed that the F. B. I. agent might have been in error and that USF&G might have made the payment to Romero and Rhines as a volunteer. The court ruled that Ricklefs's motion for summary judgment was premature and further found that the case could not be finally disposed of without USF&G being made an additional party and directed plaintiff (Ricklefs) to file an amended petition against Clemens and make USF&G an additional party defendant.

At a pretrial conference on October 16, 1972, the two actions (the instant action, district court No. 24008, and the replevin action, district court No. 24145) were consolidated. The trial court directed Clemens to make Motor City Motors, Inc. a third party defendant to the instant action, and further found that it was necessary to appoint a special master to determine whether the automobile in question was the same as that stolen from Bill Allen Chevrolet.

On December 18, 1972, the special master filed his report disclosing that the 1968 model automobile sold by Bill Allen Chevrolet to Romero and Rhines, and then stolen, was the same automobile that was later sold to plaintiff (Ricklefs) and identified as a 1969 model.

On January 23, 1973, Ricklefs filed a second motion for summary judgment against Clemens. On June 25, 1973, plaintiff's motion was sustained. The court entered judgment for Ricklefs against Clemens for breach of warranty of title, and further ruled that the amount of damages should be determined as a question of fact. On the same date the court entered judgment in case No. 24145 for USF&G granting recovery of the automobile from Ricklefs.

On November 15, 1973, Ricklefs amended his petition against Clemens and asked for full and complete restitution and consequential damages in the total amount of $5,000.00.

In pretrial proceedings on December 11, 1973, the trial court ruled that Ricklefs's only measure of relief was damages limited to the value of the automobile on the date (June 25, 1973) of the entry of judgment of replevin in favor of USF&G.

The case came on for trial on December 13, 1973. At trial the court rejected plaintiff's (Ricklefs) requested instructions on damages and restated its ruling as to plaintiff's measure of recovery previously announced by the court on December 11. The court also rejected plaintiff's proffer of evidence as to the purchase price

and the value of the automobile on December 1, 1971; and also evidence as to value as of the date of purchase. The court also ruled evidence inadmissible as to the correct model year of the automobile, the cost of repairs and improvements, and evidence of plaintiff offered to show rescission.

On December 14, 1973, the jury returned a verdict for plaintiff in the amount of $2,800.00 and judgment was entered accordingly.

On appeal, the main points asserted by plaintiff are: (1) The trial court erred in ruling that the measure of damages was the value of the automobile at the time of dispossession on June 25, 1973, when the judgment in replevin was entered; and (2) that the trial court erred in ruling that plaintiff's petition did not set forth rescission and in rejecting evidence which plaintiff claimed would have established his attempt to rescind.

Extensive arguments, which are reproduced in the record, were made to the court concerning the theories of the parties as to the proper measure of damages on the hearing for summary judgment, at pretrial on December 11, 1971, and in connection with requested instructions at trial. Understandably, the court encountered much difficulty in resolving the issue of damages in view of the complicated set of facts which had developed and the alternative, if not inconsistent, positions taken by plaintiff at the various hearings at which the question of damages was argued.

The trial court adhered to its original ruling and instructed the jury that Ricklefs was entitled to recover from Clemens the actual market value of the 1969 automobile as it existed on June 25, 1973, and that in turn Clemens was entitled to recover a like sum from the third party defendant, Motor City Motors, Inc. The court defined actual value and further instructed that in this case it meant retail market value.

Plaintiff submitted five requested instructions on damages, each of which was rejected by the court. Requested instruction No. 1 defined the measure of damages as the difference in value at the time of acceptance. The requested instruction further stated that plaintiff was entitled to incidental and consequential damages for the losses he suffered as a result of his purchase of the automobile from Clemens. In support of his position plaintiff cited K. S. A. 84-2-714 and 84-2-715 of the Uniform Commercial Code (hereafter referred to as U. C. C.). In his other requested instructions plaintiff takes a position either in the alternative to or inconsistent with his position set out in requested instruction No. 1. In requested in-

struction No. 2 he asks for the purchase price together with direct and consequential damages. In No. 3 he asks that damages be assessed on the difference in value if the automobile had been as warranted not to exceed $5,000.00 without fixing a time. In instruction No. 4 plaintiff requested that the jury be instructed that plaintiff should recover such sum as would fully compensate him for damages sustained as a direct result of the occurrence complained of by plaintiff. In No. 5 the loss to plaintiff was said to be "the retail value of the automobile as it would cost Warren Ricklefs."

Plaintiff argued to the trial court and now to this court on appeal that where a buyer has accepted goods and promptly given the seller notice of breach after discovery, under the provisions of K. S. A. 84-2-607, the applicable measure of the buyer's damages is set forth in K. S. A. 84-2-714 (2) and (3) which read:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

K. S. A. 84-2-715, pertaining to incidental and consequential damages referred to in (3) above, reads:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include

"(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b) injury to person or property proximately resulting from any breach of warranty."

The trial court apparently took the position that 84-2-714 was applicable, but that because of the special circumstances which the court found to exist in this case, the plaintiff's damages were of an amount different from the difference between values at the time of acceptance, as set out in 84-2-714 (2), and that other damages claimed by plaintiff did not fall within the contemplation of incidental and consequential, as set forth in 84-2-715. The trial court agreed with defendant's argument that damages for breach of war-

ranty of title consisted of value at the time of dispossession. In this connection the court commented:

> ". . . I think he [plaintiff] is entitled to recover what he actually lost, and what he actually lost was a car that [was] almost three years after he got it, but that's what he lost, nonetheless, because of this."

We agree there were special circumstances existing in this case. No contention is alleged or made that defendant Clemens was guilty of fraud or bad faith. He did not know and had no reason to know the automobile was stolen when he sold it to plaintiff. In other words, Clemens was an innocent party. The number of transactions in which the automobile was involved in two different states and the fact that the model year had been changed in the title, making identification difficult and requiring the appointment of a special master to establish the true identity of the automobile, coupled with the use and possession by plaintiff from March until December without any notice of a defective title, we believe to be sufficient special circumstances to take the case out of the "time of acceptance" provision of 84-2-714 (2). We cannot agree, however, that the proper time for fixing difference in value was June 25, 1973, when judgment in replevin was entered. It is undisputed that plaintiff lost the use of the automobile on December 1, 1971, after notice by the F. B. I. agent.

K. S. A. 84-2-312, the code provision for warranty of title, does not mention, specifically, warranty of quiet possession; however, in this connection, we find the following in the official U. C. C. comment:

> "The warranty of quiet possession is abolished. Disturbance of quiet possession, although not mentioned specifically, is one way, among many, in which the breach of the warranty of title may be established."

See, also, Vol. 7 Vernon's Kansas Statutes Annotated, Uniform Commercial Code, [Howe and Navin], § 84-2-312, p. 208. In *Amer. Container Corp. v. Hanley Trucking Corp.*, 111 N. J. Super. 322, 268 A. 2d 313, an action involving the sale of a stolen semi-trailer wherein the court considered the language of section 84-2-312 of the U. C. C., the court had this to say:

> "The purchaser of goods warranted as to title has a right to rely on the fact that he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title. . . ." (p. 331.)

In this case the notice of the F. B. I. agent and the warning given

to plaintiff that he might be arrested is sufficient to cast a shadow over plaintiff's title and establishes a breach of warranty of title.

Although Clemens, under the circumstances, may be said to be innocent, he is, nevertheless, liable to Ricklefs for breach of warranty of title, both express by virtue of the certificate guaranty and implied by virtue of the U. C. C. (K. S. A. 84-2-312). The rule for measuring damages for breach of warranty regarding accepted goods is spelled out in 84-2-714 and 84-2-715 of the U. C. C. The language of 84-2-714 and 84-2-715 read in its entirety leads to the conclusion that generally the measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. This has long been the rule adhered to in this jurisdiction. In *Allen v. Brown,* 181 Kan. 301, 310 P. 2d 923, a case involving breach of a new automobile warranty, we held:

"The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of such circumstances showing proximate damage of a greater amount, this is the difference between the value of goods at the time of delivery and the value they would have had if they had conformed to the warranty." (Syl. ¶ 6.)

See, also, *Perry v. Schoonover Motors,* 189 Kan. 608, 371 P. 2d 152; *Fox v. McKay Motor Co.,* 188 Kan. 756, 366 P. 2d 297; and Author's Comment on § 84-2-714, Vol. 7 Vernon's Kansas Statutes Annotated, Uniform Commercial Code, [Howe and Navin], p. 568.

It is to be noted that in 84-2-714 the U. C. C. uses the term "value", rather than contract or purchase price. This is in accord with the rule in Kansas. In dealing with a breach of a new automobile warranty in *Perry* this court cited numerous prior cases in which the court affirmed the rule that the plaintiff is entitled to the benefit of his bargain and in the opinion approved an instruction of the trial court which read:

" '. . . you are instructed that the measure of damages is the difference in the value between the car represented to the plaintiff by the defendant and the value of the car actually received by the plaintiff. . . .' " (p. 611.)

To the same effect see *Allen v. Brown,* supra; and *Fox v. McKay Motor Co.,* supra. Although following the "value" rule in *Perry* the court noted that the price paid for an article is some evidence of its value for the purpose of assessing damages (citing *Trapp v. Refining Co.,* 114 Kan. 618, 220 Pac. 249). In view of the foregoing, we cannot agree with the contention of plaintiff (Ricklefs) that his damage should be measured by purchase price, rather than value.

However, we do agree that purchase price was admissible as some evidence of value for the purpose of assessing damages.

With regard to Ricklefs's claim for incidental and consequential damages in support of which he proffered evidence of expenses for repairs and improvements, while not falling within the contemplation of damages under 84-2-715, such expenses, if relevant on the issue of value are admissible as evidence tending to show value of the automobile on December 1, 1971, the salient date. Any value of the use of the automobile between March and December flowing to plaintiff is counterbalanced by any depreciation in the value of the automobile between those dates.

Applying the law of our prior decisions dealing with breach of warranty in the light of pertinent sections of the U. C. C. referred to, we have concluded that, under the particular circumstances shown to exist in this case, the rule to be applied in ascertaining damages is the difference in value of the automobile in question on December 1, 1971, and its value if title had been as warranted. Since plaintiff's possession was undisturbed until December 1, that date, in this case, is the salient date rather than the date of acceptance. We believe the circumstances recited above justify exception to the time of acceptance rule as contemplated by the language of 84-2-714 (2).

Since the automobile was warranted to be a 1969 model, when sold by Clemens to Ricklefs, we agree with the trial court that the issue should be submitted to the jury on that basis.

Few cases have come to our attention which, under the U. C. C., have dealt with the sale of a stolen automobile or other tangible property where the property has remained in the possession of the buyer for an extended period of time before the fact of theft was established. In *Itoh v. Kimi Sales*, 74 N. Y. Misc. 2d 402, 345 N. Y. S. 2d 416, the buyer had possession of a stolen automobile for more than two years, yet sued for the purchase price. In finding that this was a special circumstance which removed the case from application of the usual time of acceptance rule, set out in 84-2-714 (2), the court quoted with approval from the New York Official Comment as follows:

"As stated in the Official Comment (McKinney's Cons. Laws of N. Y., Book 62½ Uniform Commercial Code, § 2-714), 'Subsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty, but it is not intended as an exclusive measure.' It

recognizes the possibility of a different measure where 'special circumstances show proximate damages of a different amount' and subsection (3) allows 'In a proper case any incidental and consequential damage.' *A case involving breach of warranty of title, where stolen tangible property is taken away from the buyer at sometime after the purchase, is one where there are special circumstances so that the measure of damages should be the value of such property when it is taken away. In this way, the buyer will recover what he has 'actually lost'.* He will get the benefit of any appreciation in value, as occured in *Menzel v. List,* (24 N. Y. 2d 91, *supra*), including items of value he may have added to the stolen property—as claimed by plaintiff; and, on the other hand, he will not be unduly enriched by depreciation in the value of the property, from the use of which he benefited until it was taken from him— as claimed by Kimi. . . ." (pp. 404, 405.) (Emphasis supplied.)

We are aware of cases that, under particular circumstances, hold otherwise. For example, *John St. Auto Wrecking v. Motors Ins.,* 56 N. Y. Misc. 2d 232, 288 N. Y. S. 2d 281, wherein an insurance company sold a damaged automobile to plaintiff-buyer who repaired the automobile to put it in saleable condition and was found to be entitled to purchase price plus costs of repair. In the *John St. Auto Wrecking* case the court reiterated the New York rule:

"As to the time a warranty of title is breached, the New York courts have held that a cause of action arises when the buyer is disturbed in his possession. . . ." (p. 234.)

The disparity among the various jurisdictions in pre Uniform Commercial Code decisions concerning measure of damages in actions for breach of warranty title is shown in the cases collected in 13 A. L. R. 2d, Annotation, p. 1372. There appears to be a substantial number of jurisdictions which favor the rule of value at the time of dispossession and many of those decisions hold that price is evidence (in some cases strong evidence) of value.

While Kansas breach of warranty cases, heretofore discussed, do not specifically deal with breach of warranty of title, we believe that consistency compels adherence to the difference in value rule that has been firmly established in those cases.

Concerning plaintiff's claims of error in the trial court's refusal to permit him to proceed under the theory of rescission, plaintiff concedes it was not specifically pled. Even though plaintiff's petition might be construed to encompass the theory, we find no mention of rescission shown in the record until the conference on December 11, 1973—two days before trial. In the meantime, plaintiff had filed and argued two motions for summary judgment and had participated in numerous conferences in which issues and

theories were discussed. Even if plaintiff may have made a case for rescission we find no abuse of discretion in the trial court's ruling under the circumstances.

The judgment is reversed and the cause remanded with directions to retry the issue of damages in accordance with what has been said in this opinion.