Carl SCHNEIDT, d/b/a Auto Electric Company, Plaintiff and Appellee,

v.

ABSEY MOTORS, INCORPORATED, Defendant and Third-Party Plaintiff and Appellant,

v.

David A. RAMAGE, Third-Party Defendant.

Civ. No. 9226.

Supreme Court of North Dakota.

Dec. 8, 1976.

Ruemmele & Hamilton, Grand Forks, for defendant and appellant; submitted without oral argument by R. Lee Hamilton, Grand Forks.

Thorsen & Widdel, Grand Forks, for plaintiff and appellee; submitted without oral argument by John E. Widdel, Grand Forks.

ERICKSTAD, Chief Justice.

The controversy in this case involves a 1970 Lincoln Continental, which was apparently stolen from Hertz Corporation, and which ultimately came into the hands of one Ronald Otis Fischer of Jacksonville, Florida, on August 19, 1970, who transferred it to David A. Ramage, who in turn on November 9, 1971, sold it to Absey Motors, Incorporated, of Grand Forks, North Dakota, which corporation on May 17, 1973, consigned it to Tri-State Auction Co., Inc., for sale by auction. Thereafter Carl Schneidt, doing business as Auto Electric Company of Miles City, Montana, purchased the Lincoln at the auction and drove it to Miles City, Montana, where it was sold by Schneidt to one Dallas Bentley, who used it until he was sued by Hertz Corporation, who claimed title to the Lincoln, at which time the Lincoln was returned to Schneidt, who then leased to Bentley another vehicle for 41 days, and thereafter accepted the Lincoln from Bentley as a trade-in on another vehicle. Later, the Lincoln was delivered by counsel for Schneidt to Hertz Corporation as a result of a Montana court order.

Schneidt brought this action against Absey Motors to recover damages for breach of warranty of title to the Lincoln Continental. Absey filed an answer denying liability and a third party complaint against Ramage alleging that if Absey was liable to Schneidt, that Absey was entitled to reimbursement from Ramage for any money found by the court to be due from Absey to Schneidt.

On motions for summary judgment made by all three parties to this action, the trial court concluded that summary judgment should be entered in the main action in favor of Schneidt against Absey Motors on the issue of liability only, and that summary judgment should be entered in the third party action in favor of the third party plaintiff, Absey Motors, against the third party defendant, David Ramage, on the issue of liability only.

When the issue of the amount of damages was litigated, counsel for Ramage assumed the defense on the part of Absey

Motors apparently through a settlement concluded between Absey Motors and Ramage.

Following the trial on the issue of damages, the trial court concluded that Schneidt was entitled to recover from Absey Motors the sum of $3,344.28 plus costs and disbursements with interest to accrue at the rate of six percent per annum from the date of the judgment.

In its findings, the court itemized the damages as follows:

"1.  The purchase price of the automobile and auction fee
$2,110.00

"2.  The Montana attorney's fees and costs
336.00

"3.  The wholesale value of the parts and repair work done by plaintiff in preparation of the automobile for sale and the wholesale value of the rebuilt transmission and labor for installation.  Retail of $777.68 less 25%
583.26

"4.  Reasonable rental fee for replacement car furnished to Dallas Bentley from Feb. 15, 1974 to March 26, 1974.  Retail value of $820.00 less 25%
615.00

"5.  His costs and disbursements in this action."

The aforesaid items of damages totaled the sum of $3,644.26 from which the court allowed a reduction of $300 for reasons not too obvious to us.  As this reduction is not complained of, we shall not consider it in the discussion of the case today.

The contentions asserted by the appellant Absey Motors on appeal are fourfold.

"I.  THE HOLDING OF THE TRIAL COURT THAT THE PLAINTIFF'S FAILURE TO ACCEPT THE $1,000.00 SETTLEMENT OFFER OF THE HERTZ CORPORATION WOULD NOT LIMIT HIS DAMAGES TO THE AMOUNT OF THE OFFER BE- CAUSE PLAINTIFF HAD NO DUTY TO MITIGATE HIS DAMAGES WAS CONTRARY TO THE EVIDENCE AND THE LAW

"II.  EVEN IF THE PLAINTIFF DID NOT HAVE A DUTY TO MITIGATE DAMAGES, THE COURT APPLIED THE WRONG MEASURE OF DAMAGES BY FAILING TO CONSIDER THE VALUE OF THE VEHICLE AT THE TIME DALLAS BENTLEY SOLD THE CAR BACK TO PLAINTIFF

"III.  THE RENTAL FEE CLAIMED BY SCHNEIDT WAS NEITHER REASONABLE OR NECESSARY AS A MATTER OF LAW AND TO AWARD SAME AS DAMAGES WAS ERROR

"IV.  THE COURT ERRED IN ITS COMPUTATION OF DAMAGES AND, AS A RESULT, AWARDED PLAINTIFF DOUBLE DAMAGES"

In this case, Schneidt commenced an action against Absey Motors in District Court of Grand Forks County for damages alleged to have been sustained as the result of a breach of warranty of title to the 1970 Lincoln Continental which Absey Motors had sold to Schneidt through an auctioneer, Tri-State Auction.

The damages sought by Schneidt were for the return of his purchase price of $2,110 together with various repairs in the amount of $777.68, the cost of the use of a vehicle which Schneidt supplied Bentley when Bentley returned the Lincoln to Schneidt when title was claimed by Hertz Corporation in the sum of $820 or $20 per day for 41 days, and attorney's fees which Schneidt was required to pay in defending the title in Bentley against Hertz Corporation in the amount of $336.

In its answer to Schneidt's complaint, Absey admitted selling the 1970 Lincoln to Schneidt, but alleged that Schneidt failed to give reasonable notice of a claim for breach

of warranty, failed to mitigate damages, and was guilty of laches.

As previously indicated, Absey also commenced a third party action against David A. Ramage who had sold the car to Absey. That action was disposed of without trial and is not involved in this appeal.

No appeal was taken from the summary judgment imposing liability upon Absey, but appeal is taken in the instant case on the issue of damages.

Let us first consider the contention that the trial court erred in not limiting Schneidt to the recovery of $1,000 which was the offer of settlement made by Hertz Corporation when it first asserted its claim against Bentley in the State of Montana for recovery of the Lincoln Continental.

Absey contends that Schneidt had the duty to mitigate his damages by accepting the $1,000 settlement offer of Hertz Corporation according to the principles announced in *Nicola v. Meisner*, 84 N.W.2d 702 (N.D.1957) and *Stetson v. Investors Oil, Inc.*, 140 N.W.2d 349 (N.D.1966).

■ The general rule requires a person injured by the wrongful act of another to exercise reasonable care to avoid loss or to minimize the resulting damages as set forth in *Baldus v. Mattern*, 93 N.W.2d 144 (N.D. 1958). Schneidt contends that the court was correct in placing its reliance upon the exception to the general rule.

Although the parties have used the terms "mitigate" and "minimize" interchangeably, because respected authority is of the view that the term "minimize" more appropriately expresses the meaning courts intend when discussing the doctrine of avoidable consequences, we will use that term in this opinion. *See* Dan B. Dobbs, Remedies § 3.7, at 188 (1973).

In the instant case, it is acknowledged that Schneidt could have settled with Hertz Corporation initially for $1,000 and subsequently when Hertz had expended money for attorney's fees for the sum of $1,300, but that Schneidt declined to so settle with Hertz Corporation, allegedly because

Schneidt had no assurance that the Hertz claim was the only claim.

Although it is contended by Absey that Absey did not know of the offer of the Hertz Corporation to settle for $1,000, and that such offer was not communicated in any way to Absey, the trial court found that one of the officers of Absey "knew" of the offer. Since we will not set aside a finding of a trial court on an issue of fact unless the finding is clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure, we decline to find in this instance that the trial court erred. *Mattco, Inc. v. Mandan Radio Association, Inc.*, 246 N.W.2d 222 (N.D.1976); *Schwartzenberger v. Hunt Trust Estate*, 244 N.W.2d 711 (N.D. 1976).

From our analysis of the transcript, it appears that the trial court could have concluded that Mr. Halvorson, a representative of Tri-State, communicated the title problem to one of the officers of Absey Motors shortly after he was notified of the problem in August of 1973, and that Absey failed to do anything to defend Schneidt's title in accordance with the express written warranty of title. The trial court could also have concluded that Absey Motors received a more formal notice of the claim of Hertz Corporation through a letter from Schneidt's Montana attorney, dated January 4, 1974. In that letter, Absey was specifically requested to honor its warranty of title to Schneidt. The mere fact that Absey may not have been informed of the $1,000 offer, we think immaterial, inasmuch as Absey made no effort to ascertain the price of settlement. There is no logical reason why Hertz would have required more in the way of settlement from Absey than it did in the way of settlement from Schneidt.

Let us return to the issue of avoidance of consequences or the duty to minimize damages.

■ We think that the trial court was correct in holding that under the circumstances of this case, where Absey would have had an equal opportunity to perform,

in other words, to buy out Hertz Corporation, that Schneidt had no duty to do so.

■ Paragraph seven of the syllabus in *Baldus v. Mattern, supra,* cites the rule which the trial court in the instant case applied. It reads:

"7. The rule which requires a person injured by the wrongful act of another to exercise reasonable care to avoid loss or minimize the resulting damages and requiring a party to a contract, subject to injury for breach by the other party, to make reasonable efforts and exercise ordinary care and diligence to reduce the resulting damages, is not applicable where the party whose duty to perform a contract has equal opportunity for performance and equal knowledge of the consequences of nonperformance, as he cannot be heard to say that the other party might have performed for him." *Id.* at 146.

Even under the general rule as set forth in 15 Am.Jur. *Damages* § 27, pp. 420–22, and quoted in *Nicola v. Meisner, supra,* Schneidt was excused from minimizing damages in this case because the money necessary to purchase Hertz's interest was not, relatively speaking, a trifling expense.

" 'One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover; or, as the rule is sometimes stated, he is bound to protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided. It is also an elementary principle that a party claiming damages must not be in fault in contributing to them by his own want of proper care; and such care must extend to the protection from further loss after the act complained of. If he fails to use such diligence, his negligence is regarded as contributing to his injury, and furthermore, such damages as could have been so avoided are not regarded as the natural and probable result of the defendant's acts.' " *Nicola v. Meisner, supra,* at 705–706.

In the course of our consideration of this case, an issue has arisen not raised at the trial level nor considered by the trial court and not raised by counsel at the appellate level.

■ That issue revolves around the rule that unaccepted offers of compromise are not admissible in evidence as admissions. *See Larson v. Quanrud, Brink & Reibold,* 78 N.D. 70, 47 N.W.2d 743, 748 (1951).

It is the view of the writer of this opinion that the rule above stated is the proper rule, but that it has no application to the instant case. The evidence of the Hertz offer was not submitted as proof of an offer of compromise on the part of any of the *litigants* to this lawsuit.

Whether the evidence of the offer made in this case would have been excludable under the rule above discussed, or as a variation or extension of it, we need not decide because of the state of the record and the posture of the parties.

Absey's next contention is that even if Schneidt did not have a duty to mitigate damages, the court applied the wrong measure of damages by failing to consider the value of the Lincoln Continental at the time Bentley sold the car back to Schneidt.

Absey asserts that Section 41–02–93(2), N.D.C.C., identical to Section 2–714 of the Uniform Commercial Code, applies. It reads:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Absey asserts that the "unless . . ." phrase has been ignored and that there are special circumstances justifying damages in the instant case of a different amount.

We must always be careful, in a case involving as many close questions of damages as this one, to make sure no party is compensated for a loss he did not in fact incur, or be fully reimbursed for an expense for which he has already received a benefit. We must examine the present case in this light to see if there exist "special circumstances" which would make the general measure of damages stated in Section 41–02–93(2), N.D.C.C., *supra*, inapplicable.

An excellent discussion of "special circumstances" and application of a fitting remedy is found in a New York City Court case:

". . . A case involving breach of warranty of title, where stolen tangible property is taken away from the buyer at some time after the purchase, is one where there are special circumstances so that the measure of damages should be the value of such property when it is taken away. In this way, the buyer will recover what he has 'actually lost'. He will get the benefit of any appreciation in value, [citation omitted], including items of value he may have added to the stolen property—as claimed by plaintiff; and, on the other hand, he will not be unduly enriched by depreciation in the value of the property, from the use of which he benefitted until it was taken from him . . ." *Itoh v. Kimi Sales, Ltd.*, 74 Misc.2d 402, 345 N.Y.S.2d 416, 420 (1973).

We agree with the reasoning of *Itoh* and that of *Ricklefs v. Clemens*, 216 Kan. 128, 531 P.2d 94 (1975), in which the Supreme Court of Kansas reviewed a case factually quite similar to the one at hand. In *Ricklefs*, the plaintiff purchased an automobile from the defendant and, some eight months later, was informed that the vehicle had been stolen, after which time he was unable to operate it.

Language from a previous Kansas decision was set out as the basic concept in determining damages:

"The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of such circumstances showing proximate damage of a greater amount, this is the difference between the value of the goods at the time of delivery and the value they would have had if they had conformed to the warranty." *Allen v. Brown*, 181 Kan. 301, 310 P.2d 923, 924 (1957). (Syl. ¶ 6.)

The court went on to find that the case involved "special circumstances" and that the direct and natural loss resulting from the breach could best be measured by the value of the automobile at the time the plaintiff effectively lost its use, rather than the price he paid the defendant for it. *Accord, Menzel v. List*, 24 N.Y.2d 91, 298 N.Y. S.2d 979, 246 N.E.2d 742 (1969).

In the instant case, matters are somewhat confused by the fact that Schneidt sold the car to Bentley before it was discovered that any warranty of title had been breached. We can best avoid being distracted by this circumstance by realizing that Schneidt's purchase and resale of the automobile must be viewed as arm's length transactions, and have no effect on the determination of damages except to the extent they were colored by Absey's breach of warranty of title.

Section 41–02–93, N.D.C.C., *supra*, is the U.C.C. *General Damages* provision, to be distinguished from the provisions for incidental and consequential damages set forth in Section 41–02–94, N.D.C.C. In dealing with general damages, we are concerned with the type of damages which generally flow from the wrong done the plaintiff, rather than the actual expenses he has incurred. *See* Dan B. Dobbs, Remedies § 3.2 (1973). It is for this reason that, in an action for breach of warranty of title, general damages are assessed in terms of value. *Bremen Elevator Co. v. Farmers' & Merchants' Bank of Sheyenne*, 56 N.D. 110, 216 N.W. 203 (1927).

We find that the trial court erred in considering the expenses Schneidt incurred

in repairing the Lincoln to the satisfaction of Bentley in assessing damages against Absey. These expenses did not flow from the breach of warranty of title. Since there was no claim of breach of an implied warranty of merchantability under Section 41–02–31, N.D.C.C., we must assume that Schneidt bought the car with knowledge that such repairs might have had to be made, and this was considered in the purchase price in an arm's length transaction. The repairs were made and Schneidt had the use of the Lincoln, as repaired, until he lost such use upon discovery that he did not have good title. It is immaterial whether he used the car personally or sold it to a third party, as he did buy the car back from Bentley before it was returned to Hertz. The repairs made to the car affected its value at the time Schneidt lost its use, which is the correct measure of damages.

Therefore, it was error to include the $583.26 value of parts and repair work done in the itemized damages found by the court.

■ Absey also assigns error to the assessment of the $615 rental fee for replacement car furnished to Bentley from February 15, 1974, to March 26, 1974, as incidental or consequential damages. We agree that this was error.

Although the Findings of Fact and Conclusions of Law in this case do not show under what theory the rental charges were assessed against Absey, the Memorandum Decision states that ". . . [t]he necessity for the need of the rental vehicle arose as the direct consequence of the seller's breach."

Incidental and consequential damages are covered by our enactment of U.C.C. Section 2–715:

"1. Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"2. Consequential damages resulting from the seller's breach include

"a. any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"b. injury to person or property proximately resulting from any breach of warranty." § 41–02–94, N.D.C.C.

The above quoted language from the trial court's Memorandum Decision apparently refers to "consequential damages", the subject of Section 41–02–94(2). The error in viewing the rental fees as proper consequential damages can be seen on the face of the statute.

First of all, it ignores the famous Rule in *Hadley v. Baxendale*, 156 Eng.Rep. 145 (Ex. 1854), which is expressly retained in the section. *See* White & Summers, Uniform Commercial Code § 10–4 (1972). It can hardly be said that Absey, either at the time it sold the car to Schneidt or any time thereafter, had "reason to know" that Schneidt would accommodate its customers by renting them cars and ultimately assuming the rental cost. Section 41–02–94(2), N.D.C.C., *supra*. The Comment clarifies this even further:

"2. Subsection (2) operates to allow the buyer, in an appropriate case, any consequential damages which are the result of the seller's breach. The 'tacit agreement' test for the recovery of consequential damages is rejected. Although the older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know' in advance is followed, the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise. Subparagraph (2) carries forward the provisions of the prior uniform statutory provision as to consequential damages resulting from breach of warranty, but modifies the rule by requiring first that the buyer attempt to minimize his damages in good faith, ei-

ther by cover or otherwise." Uniform Commercial Code § 2–715, Comment 2.

In summary, we have found in error the awards of $583.26 for parts and repair work done and $615 rental fee for replacement car furnished to Dallas Bentley. The purchase price of the car by Schneidt from Absey is an erroneous measure of damages, the correct measure being the car's value at the time Schneidt lost the use of it. The awards of $336 for Montana attorney's fees and $38 in costs and disbursements in the lower court's action, being unchallenged, are left intact.

As the precise time at which Schneidt lost the use of the automobile and the value at that time are questions of fact and have not been ruled on in the lower court, this case must be remanded for determination of those issues.

Reversed in part and remanded for determinations not inconsistent with this opinion.

PEDERSON and PAULSON, JJ., concur.

VOGEL, Justice (dissenting in part and concurring in part).

I dissent from that portion of the majority opinion which holds as a matter of law that the rental value of a substitute automobile is not allowable as damages in this case and, presumably, in others like it.

I agree with the statement of what the law is on this subject, but it seems to me that the application of that law to the facts raises a question of fact which is for the judge or jury: whether the need for substitute transportation (cost of automobile rental for 41 days) after loss of use of the stolen automobile is a foreseeable consequence of the breach of a warranty of title, under all the circumstances of the case. I would not decide this question as a matter of law. It is, I believe, a question of fact which has been decided by the trier of fact, the district judge, and contrary to the majority opinion. The conclusions of law of the trial judge say, in part:

" . . . Similarly, . . . the need of the rental vehicle arose as the direct consequence of the seller's breach. The

plaintiff supplied Mr. Bentley with the rental car in a good faith effort to supply him with an automobile as they had agreed."

I believe that the quoted language might better have been placed in the findings of fact, since it constitutes a finding that the rental of a substitute automobile for 41 days during the period of uncertainty of the title was a reasonable and foreseeable consequence of a breach of warranty of title. As we said, in *Stockmen's Insurance Agency, Inc. v. Guarantee Reserve Life Insurance Co.*, 217 N.W.2d 455, 462–463 (N.D. 1974),

"Whether a particular finding is a finding of fact or is a conclusion of law will be determined by the reviewing court, and a designation by the trial court is not conclusive."

I would therefore affirm the trial court on this point.

I also dissent from that paragraph of the opinion stating the writer's view as to why the general rule of admissibility of offers of settlement does not apply to this case. I agree that the general rule should not be applied here, but solely for the reason that the case was tried on the basis that the offer was admissible, no one objected to it, and the pleadings, the decision of the trial court, and the briefs on appeal all assumed the admissibility of the compromise offer. My reason for raising the question is that I am much concerned that the majority opinion might leave the impression that there is, or under some circumstances may be, a duty to minimize damages by accepting a compromise offer. The majority opinion should not be so read, in my opinion.

The same paragraph of the majority opinion gives as the reason for the discussion of compromise offers in this case that

"The evidence of the Hertz offer was not submitted as proof of an offer of compromise on the part of any of the *litigants* to this lawsuit."

The statement is true, but unhelpful. The evidence of the Hertz offer was submitted not as an offer of compromise by a

litigant, but as an offer *to* a litigant, which the parties obviously thought he must accept in order to mitigate damages. This, of course, was not true—there is no duty to accept compromise offers.

I concur in the result of that portion of the majority opinion discussing the Hertz offer in compromise, but only because it was litigated by consent of the parties.

SAND, J., concurs.