Francis N. Pécora, J.
The defendant, Liberty Mutual Insurance Co. (“ Liberty ”) had insured one Peter J. Oaputo against loss by theft of a 1966 Buick Riviera automobile, said vehicle bearing identification No. 494876 H 932744. His automobile was reported stolen. “ Liberty ”, under its theft policy, paid Oaputo for his loss and took from Caputo an assignment of his ownership of the car.
Thereafter, a 1966 Buick Riviera was recovered by the police. •s Liberty ” claimed this vehicle as that which had belonged to Caputo, and took possession of this car. At this time, the automobile had been stripped of many of its parts, including bumpers, seats, doors, etc., and was otherwise damaged.
“ Liberty ” sold this vehicle to the plaintiff herein on March 9,1967 for the total sum of $575.
The plaintiff then proceeded to have the car restored at an additional cost to plaintiff in the sum of $3,017.19.
After completion of the restoration, plaintiff attempted to sell the car, and, for the first time, his attention was called to the fact that one of the serial numbers of the car was missing. His suspicion aroused, plaintiff immediately communicated with the National Auto Theft Bureau, and the following facts came to light:
The defendant, Maryland Casualty Company (!< Maryland ”) had insured a 1966 Buick Riviera bearing identification No. 494876H27921. This automobile had been reported stolen. 1 ‘ Maryland ’ ’ paid its assured the value of the car, and took from its assured an assignment of ownership.
Since the vehicle was located in Mount Vernon, the Bureau of Police of the City of Mount Vernon was notified, and in due course, the vehicle was seized and impounded by the Mount Vernon Police, who thereafter released the car to 6 6 Maryland 5 \
An examination of the vehicle by Donald R. Zivney, an employee of the National Auto Theft Bureau, indicated that the “ Liberty ” vehicle and the “ Maryland ” vehicle were one and the same. In effect, this witness testified that the engine of the vehicle was that of the car originally insured by 6 6 Liberty 5 ’ and that the chassis of the vehicle was that of the car originally insured by “ Maryland ”.
*292 The plaintiff thereupon demanded that ‘1 Maryland ’ ’ return the vehicle to him, but ‘1 Maryland ’ ’ refused, claiming that the vehicle was theirs. The plaintiff then demanded that ‘ ‘ Liberty ’ ’ make him whole by reimbursing him for his loss, but this claim was met with deaf ears.
The plaintiff then commenced this action against “ Liberty ” and “ Maryland ”.
For the purpose of resolving the issues in this case the court need only direct the attention of the parties to section 2-312 of the Uniform Commercial Code, which provides as follows:
“ (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
(a) the title conveyed shall be good, and its transfer rightful; and
(b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
(2) Á warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim in himself of that he is purporting to sell only right or title as he or a third person may have ”.
When 11 Liberty ’ ’ sold the vehicle herein to the plaintiff, there was attached to the sale an implied warranty of title. The effect of this warranty was to guarantee the plaintiff from any claim of title from other parties. When, in fact, the vehicle was seized by the Mount Vernon Police and later turned over to “ Maryland ’ ’ under an adverse claim of title, there was established a breach of warranty of title implicit in the sale under the code. (John St. Auto Wrecking v. Motors Ins. Co., 56 Misc 2d 232.)
The defendant ‘ ‘ Liberty ” seeks to convince this court that the within sale qualifies under the exception set forth under subdivision (2) of section 2-312 of the Uniform Commercial Code. It is “ Liberty’s ” position that insurance companies do not sell ears, but rather sell what rights, if any, exist on behalf of their insured. With this, this court cannot agree. When a claim is paid by an insurance company under a theft policy, the insurance company takes an assignment of ownership from its assured. Li this context, ownership is equivalent to ‘ ‘ title ’ ’, and it is this ‘ ‘ title ’ ’ which is guaranteed under the statute.
The defendant, ‘ ‘ Liberty ’ ’ has cited, for the court’s attention, the case of Wilson v. Manhasset Ford (27 Misc 2d 154). This ease places responsibility on dealers to pay diligent attention to the evidence of ownership of all vehicles accepted or transferred in trade. With this, the court is in complete accord. But *293 in citing this case, 41 Liberty ’ ’ seeks to place this responsibility upon the shoulders of the plaintiff. When 6 4 Liberty ’ ’ undertook to sell the vehicle herein to the plaintiff, it cloaked itself with the cloak of a dealer, and, as a dealer, should have paid diligent attention to the evidence of ownership of the vehicle which it transferred in trade to the plaintiff.
It may very well be that the defendant1 4 Liberty ’ ’ may have a cause of action against its insured, Caputo, for possible fraud and deceit. Also, it may very well be that the defendant 4 4 Liberty ” may have a cause of action against44 Maryland ” under a theory of quasi contract or unjust enrichment. But these issues are not before this court, and this court expresses no opinion thereon.
Judgment, accordingly for the plaintiff, Terrance Spillane, in the sum of $3,592.19 against the defendant Liberty Mutual Insurance Co. only. The second cause of action against the defendant, Maryland Casualty Co., is dismissed.