Charles H. Cohen, J.
On or about May 15, 1970 plaintiff purchased from Kimi Sales, Ltd. (“ Kimi ”), the defendant and third-party plaintiff, for the sum of $2,173, a certain automobile which turned out to have been stolen and was picked up by the police from plaintiff on May 29,1972. Kimi had purchased this automobile at a public auction conducted by Lander, the third-party defendant, who was a licensed auctioneer.
Plaintiff sues Kimi for damages of $2,692.79 consisting of $2,173, the purchase price of the automobile paid in May of 1970; $493.63, paid by plaintiff for additions and improvements *403 to the automobile; and $26.16, paid by plaintiff for the hiring of an automobile to enable him and his family to return home when the police picked up the stolen automobile while they were driving away from home. In addition, plaintiff asks for punitive damages of $2,500 as a consequence of anguish, shame and embarrassment suffered when the police picked up this automobile. Kimi brings a third-party action against Lander asking that whatever damages are awarded against it be awarded to it against Lander.
No question is raised concerning the fact that on or about May 15, 1970 plaintiff purchased this stolen automobile from Kimi for $2,173. It is also unquestioned that when the automobile was purchased by plaintiff, Kimi, in a “ Used Car Guarantee ”, stated that “ Title to this car is guaranteed free and clear of all previous liens and encumbrances ’ ’.
Kimi claims that it believed that Lander had good title to the automobile, and that it checked the visible apparent identification number with the police and was told that the automobile was not stolen. (Apparently, the true identification number had been changed.) Even accepting Kimi’s claim as true, it is still liable to plaintiff for breach of warranty of title, both express, by virtue of the guarantee, and implied, by virtue of section 2-312 of the Uniform Commercial Code. (Wilson v. Manhasset Ford, 27 Misc 2d 154; John St. Auto Wrecking v. Motors Ins. Corp., 56 Misc 2d 232; Spillane v. Liberty Mut. Ins. Co., 65 Misc 2d 290, affd. 68 Misc 2d 783.)
As far as damages are concerned, there are triable issues of fact concerning all items claimed, except with respect to the purchase price paid which, if a proper item of damage, could be awarded on this motion for summary judgment. There is a question, however, as to whether this latter item is a proper item of damage. In cases specifically involving breach of warranty of title of an automobile, there have been varying results. In John St. Auto Wrecking v. Motors Ins. Corp. (supra), the purchase price paid was regarded as a proper item of damage. In Spillane v. Liberty Mut. Ins. Co. (supra) it was also allowed as an item of damage although without any discussion. Yet in Wilson v. Manhasset Ford (supra) the court awarded as damages, again without discussion, the fair and reasonable value of the stolen automobile at the time it was surrendered.
The Court of Appeals in Menzel v. List (24 N Y 2d 91), in a case involving a stolen painting which had appreciated in value after it was purchased, has resolved this question. After carefully considering possible measures of damage arising out of *404 a cause of action for breach of warranty of title, it concluded that the proper measure of damages was the value of the painting at the time the injured party was required to return it, and not the purchase price. That the value of a stolen item may have depreciated in value — as may be the case with automobiles generally (although not necessarily as in the case of, for example, antiques) —would not require a different measure of damages. The object is to reflect what the buyer has “ actually lost ” and award “ to him only the loss which has directly and naturally resulted, in the ordinary course of events, from the seller’s breach of warranty. ” (Menzel v. List, 24 N Y 2d 91, 98, supra). This language was undoubtedly based upon subdivision 6 of former section 150 of the Personal Property Law which read: ‘ ‘ The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty ”. While this language has been rewritten in the presently applicable statute (Uniform Commercial Code, §§ 2-714, 2-715), the result, in a case involving breach of warranty of title, is the same. Section 2-714 of the Uniform Commercial Code states:
“(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller’s breach as determined in any manner which is reasonable.
“ (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance obetween the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
“ (3) In a proper case any incidental and consequential damages under the next section may also be recovered.”
As stated in the Official Comment (McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 2-714), “ Subsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty, but it is not intended as an exclusive measure.” It recognizes the possibility of a different measure where ‘ ‘ special circumstances show proximate damages of a different amount” and subsection (3) allows “In a proper case any incidental and consequential damage. ’ ’ A case involving breach of warranty of title, where stolen tangible property is taken away from the buyer at sometime after the purchase, is one where there are special circumstances so that the measure *405 of damages should be the value of such property when it is taken away. In this way, the buyer will recover what he has “ actually lost”. He will get the benefit of any appreciation in value, as occurred in Menzel v. List (24 N Y 2d 91, supra), including items of value he may have added to the stolen property— as claimed by plaintiff; and, on the other hand, he will not be unduly enriched by depreciation in the value of the property, from the use of which he benefited until it was taken from him — as claimed by Kimi. In addition, plaintiff may seek to recover for incidental and consequential damages (Uniform Commercial Code, § 2-714, subd. [3]; § 2-715) which may include expenses for hiring an automobile (and, perhaps, punitive damages, regarding which the court is not now expressing an opinion as to whether this is recoverable at all). (See Walker v. Sheldon, 10 N Y 2d 401.)
Since all of the items of damage to which plaintiff may be entitled involve triable issues of fact, the court, while granting plaintiff’s motion for summary judgment against Kimi, directs that there be an assessment of damages after which judgment shall be entered in favor of plaintiff against defendant for the amount of damages determined upon such assessment. ('CPLR 3212, subd. [c].)
There is also before the court the motion by Kimi for summary judgment against Lander. If Lander had simply sold the stolen automobile to Kimi, there would be no problem in granting this motion. However, Lander was not the actual seller, but was an auctioneer who sold it for a principal at a public auction. There may be circumstances, as in the case of an auctioneer acting as agent for an undisclosed principal, where the auctioneer may be liable for breach of warranty. (Weisz v. Parke-Bernet Galleries, 67 Misc 2d 1077; see Meyer v. Redmond, 205 N. Y. 478; Orient Mid-East Lines v. Albert E. Bowen, Inc., 458 F. 2d 572, 576; see, also, Regan Purchase & Sales Corp. v. Primavera, 68 Misc 2d 858; cf. Millfield Realty Co. v. Catena, 256 N. Y. 435.) However, all that appears from the papers presented in this motion for summary judgment is that Landers, at the instance of one Kiely, Inc., sold the automobile in connection with the foreclosure of a lien held by Kiely, Inc. There is no indication as to whether or not Landers disclosed the name of his principal to Kimi or to the public, although there may have been some notice published indicating that one Ann Flood was the listed owner. Kimi does not state how the auction sale took place or what, if anything, was announced at the sale. The court cannot determine, on the *406 papers before it, whether or not Landers is liable to Kami. There are triable issues of fact requiring that the motion of Kimi for summary judgment be denied.
While the court, in its discretion, might now sever the third-party action and continue it as a separate action (CPLR 3212, subd. [g]; 1010), since plaintiff must appear for an assessment of damages the court directs that the trial of the third-party action be held at that same time. If such third-party action is not ready for trial at that time, the assessment of damages by the plaintiff should not be delayed and plaintiff may then make an appropriate application to .sever the third-party action.