Marie Louise JEANNERET, Plaintiff,

v.

Anna VICHEY, Luben Vichey and Constantine Vichey, Defendants.

No. 77 Civ. 3401 (JMC).

United States District Court, S. D. New York.

Jan. 12, 1982.

Shea & Gould, New York City (Martin Shelton, Joseph P. Marro, Kirschenbaum, Shapiro & Marro, New York City, of counsel), for plaintiff.

Smith, Steibel, Alexander & Saskor, New York City (Ludwig Saskor, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motion for judgment notwithstanding the verdict ["judgment n. o. v."] is denied, Fed.R.Civ.P. 50. Defendants' motion in the alternative for a new trial limited to the question of damages is granted, unless plaintiff accepts a remittitur of $750,000, thereby reducing the jury's verdict in her favor to $938,000. Fed.R.Civ.P. 59.

### FACTS

After a six-day trial, the jury (1) found defendants liable for breach of contract and breach of an implied warranty of title in connection with their sale to plaintiff of Matisse's Portrait on a Yellow Background, and (2) awarded damages in the amount of $1,688,000. The jury also found defendants not liable for breach of any express warranties or fraud.

Defendants have moved for a judgment n. o. v., or, alternatively, a new trial limited to the question of damages. Defendants' motion raises several issues which can be summarized into three basic arguments: First, that the Court improperly instructed the jury as to what constitutes a breach of the implied warranty of good title, second, that the Court failed to charge the jury as to the Italian law applicable to the painting in question, and third, that the Court incorrectly decided the proper measure of damages. For the reasons set forth below the Court denies defendants' motion for a judgment n. o. v. but orders a new

trial on the question of damages unless plaintiff accepts a reduction in her damage award to $938,000.[1]

## DISCUSSION

■ In deciding whether to grant a judgment n. o. v., the Court is mindful of its obligation to view the evidence adduced at trial in a light most favorable to the non-moving party. In that light, the instant motion should be granted only if

(1) there is a complete absence of probative evidence to support the verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair-minded men in the exercise of impartial judgment could not arrive at a verdict against him.

*Unijax, Inc. v. Champion International, Inc.*, 516 F.Supp. 941, 945 (S.D.N.Y.1981) (quoting *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. de-*

*nied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970) (citations omitted)); *accord, Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167 (2d Cir. 1980).

■ Defendants first object to the Court's charge that an implied warranty of title can be breached if a substantial cloud is cast upon the title to the painting. Defendants contend that absent proof of seizure, confiscation, or forfeiture, the implied warranty of title cannot be breached. The Court, however, agrees with plaintiff that the warranty of title is breached when the plaintiff becomes aware of a claim on title by a third-party. The Official Comments to section 2–312 of New York's Uniform Commercial Code ["UCC"] make clear that the purpose of this section is to ensure that a buyer will not be exposed to a lawsuit in order to protect his title. *See* N.Y. U.C.C. § 2–312 Comment 1 (McKinney 1975).[2] The Court adopts the view expressed by both the courts of New York[3] and a num-

1. In addition to the three arguments outlined above, defendants assert that (1) plaintiff did not produce sufficient evidence to sustain the breach of contract claim, (2) the breach of implied warranty claim was submitted to the jury on a theory different from the one alleged in the complaint, and (3) because plaintiff requested an instruction concerning the return of the painting, after the case had been submitted to the jury, her damages should be limited to the value of the painting at the time of sale.

With respect to defendants' first point, the Court believes that the statute is clear, "there is in a contract for sale a warranty by the seller that . . . the title conveyed shall be good." N.Y. U.C.C. § 2–312(1) (McKinney 1975). Defendants introduced no evidence at trial to indicate that this warranty had been excluded or modified by specific language or circumstances, *see id.* § 2–312(2), and for the reasons set forth below the Court finds that based on the evidence adduced at trial, the jury could have found that the warranty of good title, and thus the contract, had been breached.

Similarly, the Court rejects defendants' contention that the breach of implied warranty was submitted to the jury on a theory different from that alleged in the complaint. The jury was asked to decide whether the "notification" of the painting by the Italian Government and the possible consequences of that notification constituted a substantial cloud on the title to the painting, which is consistent with the theory articulated in the complaint.

Finally, the Court agrees with plaintiff that it was defendants and not plaintiff who asked the

Court to instruct the jury that if plaintiff prevailed she would have to return the painting. *See* Transcript of Trial at 663–67 [hereinafter "Tr."]. Moreover, the Court's instruction to the jury did not change plaintiff's theory of the case. The instruction was given to clarify an ambiguity which defendants believed might be confusing the jury. The Court will not penalize plaintiff for clarifying something at the request of defendants.

2. Defendants have argued to the Court that reliance on the Official Comments to the U.C.C. is inappropriate. The Court disagrees. The Comments are intended "to aid in uniform construction, to aid in viewing the Code as a whole, and to safeguard against misconstruction." *See* 62 N.Y.Jur. U.C.C. § 4 (1968). *See also Szabo v. Vinton Motors, Inc.*, 630 F.2d 1, 4 (1st Cir. 1980) (Official Comments are powerful dicta); *In re Yale Express Sys., Inc.*, 370 F.2d 433, 437 (2d Cir. 1966) (same).

3. *See Marine Midland Trust Co. v. Halik*, 28 A.D.2d 1077, 1078, 285 N.Y.S.2d 136, 136–37 (4th Dep't 1967), *aff'd*, 23 N.Y.2d 789, 297 N.Y. S.2d 297, 244 N.E.2d 868 (1968); *Spillane v. Liberty Mutual Ins. Co.*, 65 Misc.2d 290, 292, 317 N.Y.S.2d 203, 206 (Civ.Ct.1970) (implied warranty of title guarantees a buyer against any claim of title from other parties; *John St. Auto Wrecking v. Motors Ins. Corp.*, 56 Misc.2d 232, 234, 288 N.Y.S.2d 281, 284 (Dist. Ct.1968) (implied warranty of title guarantees purchaser against eviction or injury from other

ber of other states [4] that the implied warranty of title is breached when the buyer is faced with a claim on title, whether valid or invalid, by a third-party.

■ Viewing the evidence adduced at trial in a light most favorable to plaintiff, the Court finds that the jury could easily have determined that a third-party, in this case the Italian Government, had made a legitimate claim on the title to the painting.[5] Therefore, defendants' motion for a judgment n. o. v. on the ground that plaintiff did not produce evidence of a breach of the implied warranty of good title is denied.

■ Defendants next argue that because the Court did not charge the jury as to the applicable Italian law, plaintiff could not as a matter of law establish either a breach of implied warranty or contract. The Court rejects this contention because the Italian law applicable to this case was in fact explained to the jury without unduly complicating the issues that the jury was required to decide. *See Vishipco Line v. Chase Manhattan Bank*, 660 F.2d 854, 859 (2d Cir. 1981); *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978); *Panama Processes, S. A. v. Cities Services Co.*, 500 F.Supp. 787, 796 (S.D.N.Y.1980).

The Court charged the jury as follows:

You have heard testimony about certain Italian customs and laws and regulations, and here I instruct you on the Italian law: There is a legal dispute involving Italian law as to what might happen to the painting if it is ever returned to Italy. A number of possibilities exist in this area. These are the possibilities:

First, the painting may be subject to confiscation.

Secondly, its owner, even if he purchased the painting in good faith, could be required to pay custom duties and/or fines. That's the second possibility.

The third possibility under Italian law is that nothing at all would happen either to the painting or to the owner.

I also instruct you if you find the painting was more than 50 years old at the time of export, then the probability that the painting will be subject to administrative or judicial proceeding is greatly enhanced. It is for you to decide whether this legal dispute and the possible consequences thereof constitute a substantial cloud over the title to the Matisse under the definitions I have given to you.[6]

The Court's rationale for instructing the jury in this fashion is set forth below.

Initially, the Court was required, by Fed. R.Civ.P. 44.1, to determine as a matter of law the foreign law applicable to the issues on trial.[7] Accordingly, in the absence of

---

party); *Kruger v. Bibi*, 3 U.C.C. Rep. 1132, 1133 (Sup.Ct.New York Co.1967) (implied warranty of title means that goods shall be free of any security interest or lien).

**4.** *See City Car Sales v. McAlpin*, 380 So.2d 865, 868 -69 (Ala.Civ.App.1979) (casting of substantial cloud on title or being forced to defend a lawsuit constitutes breach of implied warranty); *Wright v. Vickaryous*, 611 P.2d 20, 22–23 (Alaska 1980) (same); *Ricklefs v. Clemens*, 216 Kan. 128, 133–34, 531 P.2d 94, 100 (1975) (same); *Jefferson v. Jones*, 286 Md. 544, 547, 408 A.2d 1036, 1039 (1979) (same); *Skates v. Lippert*, 595 S.W.2d 22, 25 (Mo.Ct.App.1979) (claim of title whether justified or unjustified may constitute breach of warranty); *American Container Corp. v. Hanley Trucking Corp.*, 111 N.J.Super. 322, 331, 268 A.2d 313, 318 (Super. Ct.Ch.Div.1970) (casting of substantial cloud on title or being forced to defend a lawsuit constitutes breach of implied warranty); *Catlin Aviation Co. v. Equilease Corp.*, 626 P.2d 857, 860 (Okla.1981) (same).

**5.** At trial evidence was introduced which established (1) that the Italian Government had notified the painting in March of 1979, *see* Tr. at 330–31, (2) that the Italian Government had initiated criminal proceedings against defendants because of the export of the painting, *see* Tr. at 332–35, and (3) that the Italian Government definitely wants the painting back, *see* Tr. at 333.

**6.** Tr. at 631–32.

**7.** Fed.R.Civ.P. 44.1 provides:

A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

the jury, the Court heard the testimony of an expert on Italian law and accepted briefs from counsel. After reviewing this evidence, the Court determined that the parties were in agreement that (1) if the painting was more than fifty years old at the time of its export, then the provisions of the Law of June 1, 1939, No. 1089 ["Law No. 1089"] would apply, and an export license should have been obtained and export duties paid; and (2) the failure to obtain an export license would subject the painting to confiscation by the Italian Government if it were returned to Italy.

The Court was also presented with evidence that Italian Customs Regulation No. 363 ["Regulation No. 363"], which became effective in 1913, might be applicable to the exportation of the painting in question. Regulation No. 363 requires that before any painting, regardless of age, is exported, an export permit as distinguished from an export license, must be obtained from the appropriate Italian Superintendent of Fine Arts.[8] At trial, it was established that no permit was obtained for the Matisse,[9] but the parties sharply disputed the significance of this fact. Plaintiff argued that the failure to obtain an export permit caused the Italian Government to notify the painting which could lead to its seizure or confiscation by that Government.[10] Defendants argued that (1) Regulation No. 363's permit requirement was inapplicable because it has been effectively overruled by Law. No. 1089;[11] (2) even if Regulation No. 363 was applicable, the failure to obtain the necessary export documents can only be viewed as a technical violation and thus of no consequence to the title of the painting; and (3) even if the painting was improperly exported, neither the painting nor its owner would be subject to sanctions under Italian law if the owner were a bona fide purchaser.[12]

Both parties agreed that this is an area of law in much dispute among Italian legal authorities. In deciding how to instruct the jury, the Court took this uncertainty into account, and was reluctant to state definitively what would happen if the painting was under fifty years old.[13] Nevertheless,

---

**8.** *See* Tr. at 234–38; 324–28.

**9.** *See* Tr. at 300–01; 306–07; 329.

**10.** Plaintiff contended that regardless of the statutory authority upon which the Italian Government based its decision to notify the painting—either the Law No. 1089 or Regulation No. 363—the painting is now subject to inspection and possible forced sale to the Italian Government. *See* Tr. at 246–48.

**11.** In support of the instant motion, the defendants presented a complete transcript of a Court of Cassations decision upon which plaintiff's expert, Mr. Ziccardi, relied in giving his opinions at trial. Pursuant to Fed.R.Civ.P. 60(b) the Court has considered this new evidence but adheres to its earlier rulings. The Court believes that the full text of the decision is consistent with Mr. Ziccardi's testimony that Regulation No. 363 may be applicable to the painting in question.

**12.** Defendants maintain that (1) neither Law. No. 1089 nor Regulation No. 363 can be enforced against a subsequent bona fide purchaser, and (2) no Italian statute requiring confiscation or the imposition of fines or sanctions can be given extra-territorial effect. *See* Affidavit of Angelo Clarizia, at 3 (filed Sept. 18, 1981); Affidavit of Enrico Gilioli, at 3, 7–8 (filed Sept. 18, 1981).

**13.** Whether the application of Regulation No. 363 to the painting would be consistent with Law No. 1089, as plaintiff contends, or inconsistent, as defendants contend, is not the dispute which the parties asked the jury to resolve. The jury was asked to decide whether the current controversy surrounding this painting and the claims made by the Italian Government constitute a breach of the warranty of good title. To decide this question the jury had to be appraised of the applicable foreign law but neither the jury nor the Court needed to decide what the Italian Government actually can or cannot do to the painting or its owner. In reaching this conclusion the Court is mindful of the fact that:

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our own labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

*Conte v. Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960). *Cf. Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981) (purpose of extradition hearing is not to determine guilt or innocence but only to decide if

after reviewing the expert testimony and other legal authorities, the Court determined that one of three things could happen to the painting if returned to Italy, assuming it was less than fifty years old at the time of export: (1) the Italian Government might seize or confiscate the painting; (2) the Italian Government might levy customs duties and/or fines upon the then-owner of the painting for its improper export; or (3) the Italian Government might not take any action at all against the painting. The Court also determined that if the jury found the painting to be more than fifty years old when exported, it was almost certain that its owner would be subject to sanctions under Italian law, or, at least, that proceedings would be instituted against the owner, even while the painting remained outside of Italy.

■ Viewing the evidence adduced at trial in a light most favorable to plaintiff, the Court finds that the jury could reasonably have determined that the painting was painted sometime between 1919 and 1922 [14] and that it was exported from Italy sometime between 1969 and 1971.[15] Thus, the jury could have concluded that the painting was more than fifty years old at the time of export and that the failure to obtain an export license subjected the painting to Italian legal proceedings.[16] The Court further finds that the jury could have alternatively concluded that the painting was subject to either of the first two possibilities referred to in the charge.

■ Finally, the Court rejects defendants' contention that the jury was improperly instructed as to the proper measure of damages. The courts of New York have made it clear that in instances such as the case at bar, where the property in question is "unique property," see Menzel v. List, 24 N.Y.2d 91, 97, 298 N.Y.S.2d 979, 983, 246 N.E.2d 742, 744–45 (1969); Simon v. Electrospace Corp., 28 N.Y.2d 136, 144, 320 N.Y.S.2d 225, 232, 269 N.E.2d 21, 25–26 (1971); Itoh v. Kimi Sales, Ltd., 74 Misc.2d 402, 404–05, 345 N.Y.S.2d 416, 420 (Civ.Ct. 1973),[17] the buyer, after establishing a breach of warranty, is entitled to damages that reflect what the buyer actually lost— the value of the property at the time of trial.[18]

In deciding what damages in addition to the present value of the goods in question are appropriate when the breach of warranty concerns "unique goods," the courts of New York have looked to the special circumstances exception under the U.C.C. See N.Y. U.C.C. § 2–714 (McKinney 1975). Under section 2–714, a buyer can recover both incidental and consequential damages which result from the seller's breach. At trial, plaintiff introduced evidence that she suffered lost business income because of the emotional strains associated with defendants' conduct and because her reputation as

there is sufficient evidence to justify extradition under the appropriate treaty).

14. See Tr. at 46–48; 301; 538–39; 554–55.

15. See Tr. at 60; 371–72.

16. Plaintiff also contends that, by its language, the license procedures of Law. No. 1089 applied to all the works of nonliving authors without regard to the age of the work. Plaintiff then argued that because Matisse had died before the painting was removed from Italy, the painting in question needed an export license regardless of its age. Plaintiff's expert admitted, however, that this position is the subject of much dispute. See Tr. at 257–58.

17. See also Ricklefs v. Clemens, supra, 216 Kan. at 135, 531 P.2d at 101; Will of Rothko, 56 A.D.2d 499, 502–03, 392 N.Y.S.2d 870, 874 (1st Dep't 1977). See generally Comment The Art Investment Contract: Application of Securities Laws to Art Purchases, 9 Ford.Urb.L.J. 385, 395 (1981).

18. The Court's conclusion that plaintiff is entitled to the present value of the painting is further supported by the fact that plaintiff made numerous requests to defendants either to resolve the problems with the Italian Government or accept a return of the painting, which defendants refused. See Tr. at 89–99; 193–95. See also Southern Nat'l Bank v. Crateo, Inc., 458 F.2d 688, 693 (5th Cir. 1972); American Container Corp. v. Hanley Trucking Corp., supra, 111 N.J.Super. at 333–34, 288 A.2d at 318; Will of Rothko, supra, 56 A.D.2d at 503, 392 N.Y.S.2d at 874.

an art dealer was damaged.[19] She also testified that she incurred approximately $184,000 in interest charges because she was unable to sell the painting.[20] The Court finds both of these items to be damages which were objectively foreseeable by the parties when the contract of sale was consummated.[21] *See Ebasco Services, Inc. v. Pennsylvania Power & Light Co.*, 460 F.Supp. 163, 216 n.64 (E.D.Pa.1978); *Itoh v. Kimi Sales, Ltd., supra*, 74 Misc.2d at 404, 345 N.Y.S.2d at 420. *See also Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F.Supp. 738, 744 (D.N.J.1979); *Diversified Environments, Inc. v. Olivetti Corp.*, 461 F.Supp. 286, 292 (M.D.Pa.1978). *But see Long v. Quality Mobile Home Brokers*, 271 S.C. 482, 484, 248 S.E.2d 311, 313 (1978).

■ The Court, however, agrees with defendants that the jury's verdict was excessive and against the weight of the evidence. *See Garzilli v. Howard Johnson's Motor Lodges, Inc.*, 419 F.Supp. 1210, 1211, 1214 (E.D.N.Y.1976); *Uris v. Gurney's Inn Corp.*, 405 F.Supp. 744, 747 (E.D.N.Y.1975). Uncontroverted testimony was introduced at trial that if the painting was not subject to seizure by the Italian Government it was worth $750,000 and the jury could reasonably have determined that this is the present value of the painting. The Court also finds that based on the evidence adduced at trial the jury could reasonably have determined plaintiff's incidental and consequential damages to be a maximum of $188,000.[22] Therefore, the Court concludes that the damage award should not have exceeded $938,000 and that the jury's verdict in this case must consequently be reduced to that amount.

**19.** *See* Tr. at 106–09.

**20.** *See* Tr. at 106. Plaintiff testified that to purchase the painting she borrowed approximately $230,000 (700,000 Swiss Francs) at an interest rate of 10%. For the eight years that plaintiff has held the painting—June 1973 to September 1981—the interest charges amount to $184,000.

**21.** Defendants knew that plaintiff was an art dealer and that she intended to resell the painting. On a number of occasions defendants gave plaintiff paintings on consignment. *See* Tr. at 66–75. Accordingly, the Court concludes that the interest expenses and lost income

## CONCLUSION

Accordingly, defendants' motion for a judgment n. o. v. is denied, Fed.R.Civ.P. 50, and the Court grants defendants' motion for a new trial limited to the question of damages unless plaintiff, within thirty days, accepts a remittitur in the amount of $750,000, thereby reducing the jury's verdict in her favor to $938,000. In the latter event, the Court will direct the Clerk to enter judgment upon the verdict as so reduced. Fed.R.Civ.P. 59.

SO ORDERED.

which plaintiff incurred were foreseeable to defendants at the time of sale. *See Donaldson, Inc. v. Aggregate Surfacing Corp.*, 47 A.D.2d 852, 853, 366 N.Y.S.2d 194, 196 (2d Dep't), *appeal dismissed*, 37 N.Y.2d 793, 375 N.Y.S.2d 106, 337 N.E.2d 612 (1975); *Log Cabin Rest, Inc. v. Alpine Wine & Liquor Corp.*, 13 Misc.2d 129, 131, 178 N.Y.S.2d 521, 524 (Sup.Ct.1958).

**22.** This figure represents the interest expense incurred by plaintiff—$184,000—plus the sum of $4,000, representing the maximum award for lost profits that the Court concludes is supported by the evidence adduced at trial.